FRANKLIN B. NICKERSON *vs.* EUNICE A. NICKERSON & others.

Barnstable.    January 20, 21, 1920. — March 30, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Adverse Possession. Ouster. Tenants in Common. Evidence,* Presumptions and burden of proof. *Limitations, Statute of. Estoppel. Husband and Wife. Deed. Land Court.*

Sole and uninterrupted possession of land, owned in common, by one of the tenants in common with appropriation by him of the profits with the knowledge of the others, if continued for a long series of years, unexplained and uncontrolled by any evidence tending to show a reason for the failure of the other tenants in common to assert rights, furnishes evidence upon which an inference of an actual ouster and adverse possession may and ought to be drawn.

A deed by a married woman in 1865 of her interest in land owned by herself and others as tenants in common is void if her husband did not join therein nor assent to it in writing.

One of the sons and daughters of the owner of land on an arm of the sea, after the death of their father in 1865, purchased the interests therein of his brothers and sisters. The deeds given to him by his sisters were void because their husbands did not join therein nor assent thereto in writing. For forty-three years thereafter he and, after his death, his sole heir, occupied the land in connection with other land owned by them and formerly part of the same farm, worked the whole tract as a farm, made conveyances of it and a mortgage of it, carried on salt works on the shore and paid taxes upon it. In a petition for registration of the title to the land, brought in 1918 by the sole heir of the son who was the grantee in the deed of 1865, the judge of the Land Court found, besides the foregoing facts, that one of the sisters of the grantee had died a widow in 1892, having lived since 1865 but four miles distant from the property and never having made any claim to it, and also found that as to her and her heirs the petitioner had gained a title by adverse possession. *Held,* that the finding was warranted.

A married woman executed a deed of land in 1865 in which her husband did not join and to which he did not assent in writing, and the grantee at once entered into possession of the land. She died in 1889, leaving surviving her her husband and children of their union. The husband died in 1900. *Held,* that, until the termination by her husband's death of his tenancy by curtesy, the statute of limitations did not begin to run against her heirs' right in the land, which arose from the fact that her deed was void.

The heirs of a married woman, who in 1865 made a deed of land with full covenants of warranty, in which her husband did not join and to which he did not assent in writing, are not estopped from asserting, fifty-three years after the date of the deed, twenty-nine years after her death and eighteen years after the death of her husband, that the deed was void.

Land owned by a married woman was conveyed in 1851 by a deed of her husband,

in which she joined for release of dower, to one who, and his sole heir after him, occupied it openly and adversely until 1918, when the heir petitioned the Land Court for a registration of his title. The woman survived her husband and died in 1892. *Held*, that the petitioner had gained a title to the land by adverse possession.

Land owned by a married woman was conveyed in 1863 by a deed of her husband, in which she joined for release of dower, to one who, and his sole heir after him, occupied it openly and adversely until 1918, when the heir petitioned the Land Court for a registration of the title. The widow died in 1889, leaving surviving her her husband and children of their union. The husband died in 1900. *Held*, that

(1) The deed of the husband in 1863 conveyed a freehold in the land for his life, leaving rights in reversion in the heirs of his wife;

(2) The owners in reversion were not required to assert their rights in opposition to acts of disseisin by the grantee in the deed of 1863 until the termination in 1900 of the life estate thereby conveyed;

(3) The statute of limitations did not begin to run against the heirs of the married woman until the termination of the life estate in 1900;

(4) The heirs of the married woman were not estopped, by the deed of the husband in 1863 in which she joined for release of dower, from asserting that that deed conveyed only an estate for the life of the husband.

PETITION, filed in the Land Court on November 8, 1918, for the registration of the title to about twenty-six and one half acres of land at Pleasant Bay and Fourside Harbor in Chatham, occupied by the federal government as an aviation station under a lease and an agreement of sale made by the petitioner.

The petition was heard by *Davis*, J. It appeared that one Nickerson owned the land at the time of his death, intestate, in 1847. After his death a portion of it was set off as dower to his widow and, through partition proceedings, the rest of it, exclusive of the reversionary interests in the dower land, was divided among his six children. Thereafter one of the sons, the father of the petitioner, purchased of his brothers and sisters their interests in severalty and in 1865, after the death of the widow, purchased their interests in the dower land.

The issues raised at the hearing related to the validity and effect of some of the deeds conveying the interests so purchased.

The respondents are the heirs of two of the daughters of the original owner, Mehitable Bassett and Eunice Kenney. Material facts found by the judge are described in the opinion. The judge ruled that, upon the facts found by him, so far as the dower lands were concerned, title could, as matter of law, be acquired by adverse possession, and found that it had been so acquired by the

petitioner. As to the title to the land conveyed upon the partition in severalty to Mehitable Bassett, the judge found that the petitioner had acquired a title thereto by adverse possession. As to the title to the land conveyed upon the partition in severalty to Eunice Kenney, the judge in substance ruled that, upon the facts found by him, her heirs were estopped to deny the petitioner's title.

A decree registering the petitioner's title to the entire tract was ordered by the judge; and the respondents alleged exceptions.

*W. O. Kyle,* for the respondents.

*W. A. Morse,* for the petitioner.

CARROLL, J. This is a petition to register a tract of land at Pleasant Bay and Fourside Harbor in the town of Chatham, the land in question being a portion of the Nickerson farm purchased by Jesse Nickerson, the petitioner's grandfather, in 1826. Jesse Nickerson died intestate in 1847, leaving a widow and six children, — three daughters and three sons. The daughters were married, their husbands were living, and children had been born to them. Partition was made in the Probate Court among the six children, of all the real estate of which Jesse died seised, except the reversion of the northeasterly portion of the farm, which had been set off as dower to his widow.

One of the sons, Jesse Nickerson, Jr., father of the petitioner, in 1851 purchased the share which had been assigned to his sister Mehitable, the deed being executed by her husband, Isaiah C. Bassett, his wife joining merely to release dower, the land being described by metes and bounds. In 1863, Jesse, Jr., received a deed of the lot assigned to his sister Eunice, this deed being executed by her husband Nathaniel K. Kenney as grantor, she releasing dower and the land being described by metes and bounds. Jesse Nickerson, Jr., in 1851, purchased the land assigned to his sister Tamson and that assigned to the representatives of his brother Sabina. In 1864 he purchased the lot assigned to his brother David. The widow of Jesse Nickerson, Sr., died in 1862. In 1865 Jesse Nickerson, Jr., purchased from the heirs all of the land set off in dower to their mother and received from them a deed with full covenants of warranty, the sisters signing the deed of conveyance as grantors, but none of the husbands signing as grantors or otherwise.

From the time of these conveyances until his death in 1900, Jesse Nickerson, Jr., lived on the farm in full and exclusive occupation, cultivating it as tillage, mowing and pasture land, fencing it, paying taxes, mortgaging and selling parts of it and conducting salt works on the shore. He died intestate, as did his widow who died in 1904, leaving as their only heir the petitioner, who has continued in full and exclusive occupation of the locus; and neither the possession nor title of the petitioner or of his father has been questioned by any one until the examination of the title in these proceedings preparatory to the conveyance of the estate for an aviation station revealed the exact nature of the deeds and the questions of law raised in connection with them.

The heirs of Tamson assented to a decree for the petitioner. The heirs of Eunice and Mehitable are the respondents. They say that the deeds of the reversion of the dower land and the deeds of the lots assigned to Eunice and Mehitable were, so far as their interests are concerned, invalid, and that no title can be acquired against them, either by estoppel or adverse possession.

1. As to the land set off to the widow of Jesse Nickerson, Sr., the reversion in this land belonged to the six children as tenants in common; and while their respective shares could be disposed of and the title transferred by a deed in proper form, it was the settled law of this Commonwealth at the time the conveyances were made that the separate real estate of a married woman could not be conveyed by her deed. At common law, the husband during coverture had full title to the rents and profits of the wife's real estate. *Clapp* v. *Stoughton,* 10 Pick. 463, 469. He had a freehold estate which he might convey. *Austin* v. *Charlestown Female Seminary,* 8 Met. 196, 204. With exceptions not here material, prior to St. 1874, c. 184, Gen. Sts. c. 108, (see now R. L. c. 153,) the conveyance of land by deed of a married woman during her coverture transferred no title. The instrument was void and of no effect in law and equity. *Wing* v. *Deans,* 214 Mass. 546. In 1865, when the warranty deed purporting to transfer the reversion in the dower estate was signed by Mehitable and Eunice, both were married; and as their husbands did not join with them in the conveyance, the deed, so far as they were concerned, was wholly invalid and transferred none of their interest in the reversion.

The petitioner contends, however, that his father, from 1865 until his death in 1900, was in exclusive and adverse occupation under a claim of right of all the locus, including the dower land, and that from the time of his father's death the petitioner himself has been in adverse possession of the estate. To this the respondents reply that as Jesse Nickerson, Jr., was a tenant in common with the other owners when he entered on the land in 1865, his possession was not adverse to them, but was in support of the common title and there was no adverse possession by him while he occupied the premises.

It is true as a general rule that the possession of one tenant in common, even if exclusive, it being consistent with the right of his co-tenant, is not a disseisin, and an ouster or some equivalent act is necessary to accomplish this, and the sole possession of land by a tenant in common with the receipt of the profits will not alone be sufficient evidence of an ouster. But after the sole possession and appropriation of profits have been continued with the knowledge of the co-tenants for a long series of years, a presumption does begin to arise against them. *Ingalls* v. *Newhall,* 139 Mass. 268, 271. It was said by Bigelow, C. J., in *Lefavour* v. *Homan,* 3 Allen, 354, 355, "It may however be safely said that a sole and uninterrupted possession and pernancy of the profits by one tenant in common, with the knowledge of the other, continued for a long series of years without any possession or claim of right and without any perception of profits or demand for them by the co-tenant, if unexplained or controlled by any evidence tending to show a reason for such neglect or omission to assert a right, will furnish evidence from which a jury may and ought to infer a natural ouster and adverse possession." A conveyance of the premises, in connection with the other acts, may be evidence of a disseisin. See *Ingalls* v. *Newhall,* 139 Mass. 268, 273. As expressed by Shaw, C. J., in *Rickard* v. *Rickard,* 13 Pick. 251, 253, in speaking of an ouster by one tenant in common, "It is also now well settled, that a long exclusive and uninterrupted possession by one, without any possession, or claim for profits by the other, is evidence from which a jury may and ought to infer an actual ouster." *Joyce* v. *Dyer,* 189 Mass. 64.

Applying these principles and considering all the facts shown, the ruling of the judge of the Land Court that title to the dower

lands could be acquired against the heirs of Mehitable by adverse possession was right; and his finding that it had been so acquired by the petitioner was fully warranted. Jesse Nickerson, Jr., lived on the farm for twenty-five years, and after his death the petitioner continued to occupy the premises. It was not until eighteen years later that their title was questioned. During the lifetime of Mehitable she lived in Chatham, but four miles distant from the locus, and no claim was made on the petitioner or on his father. It must have been known that the exclusive occupation of the land was claimed by the petitioner and his father, and that they dealt with it as their own, using the dower land, as well as the land assigned in severalty, as their farm. While in the possession of the petitioner's father a portion of the dower land was conveyed, and during the occupancy of the petitioner he too conveyed the entire farm to his wife, which, upon her death, was reconveyed to him. In 1906 he conveyed by mortgage the entire tract, and sold portions of the farm and gave various mortgages. Taxes were paid by the petitioner and by his father. They fenced the land and cultivated it and carried on salt works on the shore. While it does not appear that all of these acts relate exclusively to the dower land, the petitioner, as his father before him, openly occupied all the land as his farm and residence. These facts amply warrant a finding that Mehitable and her heirs must have had knowledge of the occupation of the premises for more than twenty years, of the various acts indicating ownership, and that the occupation was under a claim of exclusive possession. Thus a lawful title was in fact acquired.

Although the premises were in the adverse possession of the petitioner and of his father during the coverture of Eunice Kenney and Mehitable Bassett, they had no right to begin an action for the recovery of the land, nor right to make an entry thereon. They were, as the law provided at that time, under the disability of marriage. *Austin* v. *Charlestown Female Seminary, supra.* See *Wallingford* v. *Hearl,* 15 Mass. 471; *Bruce* v. *Wood,* 1 Met. 542; *Clapp* v. *Stoughton, supra;* Pub. Sts. c. 196, §§ 5, 6; Gen. Sts. c. 154, §§ 5, 6. Mehitable died in 1892. Her husband died in 1875. The heirs of Mehitable therefore are barred by the statute of limitations and they have no estate in the lands set off in dower to the widow of Jesse Nickerson.

Eunice died in 1889. Nathaniel K. Kenney her husband survived her. He died in 1900. Although the heirs of Eunice claim under her and not under her husband, the statute of limitations did not begin to run against them on her death, because the common law estate by curtesy intervened for the life of her husband. During his lifetime the heirs of Eunice could not bring an action to recover the land, *Miller* v. *Ewing*, 6 Cush. 34, *Tilson* v. *Thompson*, 10 Pick. 359, *Jackson* v. *Johnson*, 5 Cowen, 74, 95, 96, and as the limitation period provided by the statute had not ended when the petition was filed, the heirs of Eunice are entitled to her share in the dower lands. Pub. Sts. c. 196, § 3, cls. 2, 3. Gen. Sts. c. 154, § 3, cls. 2, 3.

The principle of estoppel is not applicable to the facts here disclosed. While the deed of Eunice Kenney purported to convey the dower land, it in fact conveyed nothing, and, as we have said, was void and of no effect. It did not estop her nor her heirs. *Mason* v. *Mason*, 140 Mass. 63. *Lowell* v. *Daniels*, 2 Gray, 161. *Pierce* v. *Chace*, 108 Mass. 254, 258, 259. *Pells* v. *Webquish*, 129 Mass. 469, 472. See *Nolin* v. *Pearson*, 191 Mass. 283. She was prevented from entering on the land as hers and taking possession, solely because she was disabled by marriage, the law at that time providing that the husband held the title to his wife's lands during coverture. The husband was not a party to the deed of his wife purporting to convey the dower lands and he was not estopped by this conveyance; and at her death his estate of curtesy became consummate. During that estate by the curtesy, which was for the life of Nathaniel Kenney, Mrs. Kenney's heirs could not enter on the land by reason of the express terms of the statute. *Tilson* v. *Thompson, supra.* Pub. Sts. c. 196, §§ 1, 3, cls. 2, 3. Gen. Sts. c. 154, § 3. *Snow* v. *Hutchins*, 160 Mass. 111, is not in point. In that case the demandant's husband conveyed her lands, she assenting in release of dower, and the husband took in exchange for this conveyance a farm belonging to the tenant. There was evidence that the demandant knew the deed purported to convey a good title to the demanded premises and also knew that the tenant took possession and occupation of the premises and did work on the land in preparation for building a house. The deed of the premises was made in 1882, after the disability of married women to convey land had been re-

moved. St. 1874, c. 184. The writ of entry in that case was not brought until 1892. It was decided that the evidence warranted a finding that the demandant was estopped to claim the land against the tenant. The deed in that case was not void, the demandant was a party to it and she could, when the deed was executed, have given the purchaser a complete title, except that she could not, without his written consent, destroy or impair her husband's tenancy by the curtesy.

2. As to the lands which were assigned to Eunice and Mehitable and held in severalty by them, the contention of the respondents is that the married daughters, having acquired their interests on their father's death in 1847, held under the common law; and that at common law the husband had a freehold estate in his wife's lands during coverture, which he could sell and which during that period might be taken from him under execution. The deeds of the husbands of Mehitable and Eunice to Jesse Nickerson, Jr., the petitioner's father, operated to convey all the interests of the husbands and gave to Jesse Nickerson, Jr., the entire right of possession during the lives of the grantors. The deeds of Mehitable Bassett's husband and the husband of Eunice Kenney each conveyed to Jesse Nickerson, Jr., an estate during coverture, and if the husbands survived their wives, the deeds of grant transferred an estate during the lives of the husbands. *Barber* v. *Root*, 10 Mass. 260, 263. See *Melvin* v. *Proprietors of Locks & Canals*, 16 Pick. 137; *Bruce* v. *Wood*, *supra*.

Isaiah Bassett died in 1875. And as Mehitable died in 1892, her heirs are barred by the adverse possession of the petitioner from any share in the lands held in severalty by their ancestor.

Although Eunice, the wife of Nathaniel K. Kenney, died in 1889, her husband did not die until 1900. If the statute of limitations runs from the death of Eunice, her heirs are barred; but if it runs only from the death of her husband, they are not barred. If the husband was a tenant by the curtesy after the death of his wife, or had conveyed this estate to another, the heirs could not bring an action to recover it during his life, because the right of an heir to bring an action which accrues on the death of the ancestor is postponed, if a tenancy by the curtesy or other intermediate estate intervenes, until this intermediate estate expires.

*Tilson* v. *Thompson, supra.* Pub. Sts. c. 196, §§ 1, 3, cls. 2, 3. Gen. Sts. c. 154, § 3. R. L. c. 202, § 22. The deed of Nathaniel K. Kenney to Jesse Nickerson, Jr., in 1863, conveyed to the grantee his entire estate, and as Nathaniel had issue by his marriage, he was seised of a freehold for his own life and this freehold estate passed to the grantee. *Melvin* v. *Proprietors of Locks & Canals, supra. Raymond* v. *Holden,* 2 Cush. 264, 269. *Austin* v. *Charlestown Female Seminary, supra. Gardner* v. *Hooper,* 3 Gray, 398, 404, 405. During the life of Nathaniel Kenney the owners of the reversion, although they might take notice of any disseisin by the tenant of the particular estate, were not obliged to do so and could wait until the right of entry accrued, when Kenney died, in 1900. *Tilson* v. *Thompson, supra. Miller* v. *Ewing, supra. Wallingford* v. *Hearl, supra.* The right of the heirs of his wife to bring an action did not accrue until the intermediate estate conveyed by him to Jesse Nickerson, Jr., had expired in 1900, at which time the statute began to run against them. Gen. Sts. c. 154, *supra.* Pub. Sts. c. 196, *supra.*

The principle of estoppel relied on by the petitioner is not relevant to this branch of the case. The deed of Nathaniel Kenney conveyed his entire estate during his life. The right to make the transfer belonged to the husband and the deed of grant was a valid instrument. Whatever estate the husband owned, either for the life of his wife or for his own life, passed to the grantee, and under the statute, Pub. Sts. c. 196, *supra,* Gen. Sts. c. 154, *supra,* the heirs, as owners of the reversion, could not bring an action to recover the land, against the tenant of the particular estate, until the particular estate had ended; and the deed of Nathaniel Kenney did not estop the heirs of his wife from claiming under the independent title derived from her. See *Russ* v. *Alpaugh,* 118 Mass. 369, 376, 378; *Deans* v. *Eldredge,* 217 Mass. 583, 588.

It may be well to mention that R. L. c. 132, providing for the rights of a husband or widow in the real estate of the other and the assignment of curtesy by the Probate Court (see in this connection *Smith* v. *Shaw,* 150 Mass. 297), did not become effective until 1902. *Bunnell* v. *Hixon,* 205 Mass. 468.

It follows from this, that the heirs of Eunice have an estate in that portion of the tract of land assigned to Eunice and now held

in possession by the petitioner, and in her share of the dower lands.

The exceptions of the heirs of Mehitable are overruled, and the exceptions of the heirs of Eunice are sustained.

*So ordered.*