NELLIE M. DALEY & others *vs.* MARY A. DALEY & others.

Worcester.   December 9, 1937. — March 10, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, QUA, & COX, JJ.

*Adverse Possession.   Equity Jurisdiction*, To remove cloud on title. *Executor and Administrator*, Real estate of decedent.   *Trust*, When title of trustee vests, Adverse possession of real estate of trust, Construction of instrument creating trust.   *Devise and Legacy*, Remainder, Construction against intestacy.

A suit in equity to remove a cloud from the title to land cannot be maintained unless both actual possession and legal title are united in the plaintiff.

The legal title to real estate devised by a will to a trustee passed to him upon the probate of the will where he did not unequivocally disclaim although he never was appointed nor qualified by giving bond.

Under a will giving real estate included in the residue to a trustee for the benefit of the testator's children in equal shares during their lives and upon the death of a child "without heirs of his body, his share to be vested in the said trustee for the benefit of the remaining and surviving children equally," although there was no express provision for the ultimate disposition of the share of a child who should die leaving heirs of his body, nevertheless an interest in remainder in that share was given to such heirs.

Although the interests of the trustee and the life beneficiaries of a trust of real estate had become barred by a disseisin and adverse possession for the period of the statute of limitations, the rights to possession of remaindermen which could not arise while life beneficiaries were living were not so barred, and the disseisor was not entitled to maintain a suit in equity for removal of that cloud on his alleged title.

PETITION, filed in the Land Court on November 10, 1936, for removal of a cloud on a title.

The respondents appealed from a decree for the petitioners, entered after a hearing by *Corbett, J.*

*F. W. Morrison,* for the respondents.

*D. W. Corcoran,* (*W. J. Walsh, Jr.,* with him,) for the petitioners.

Cox, J.    This is a petition in equity brought in the Land Court to remove clouds on the alleged titles to real estate. The evidence is not reported but the judge made findings and rulings and a final decree was entered in which, after the relevant references to the parties and the land involved, it is recited that "said petitioners hold said premises as against any lawful claim of the respondents or any of them, and that none of said respondents have any legal claim to any title in and to either of the parcels of land above referred to." The respondents appealed from this decree.

The petitioners are the only heirs at law of Dennis Daley, deceased, and the respondents are the only heirs at law of Jeremiah Daley, deceased.    Dennis and Jeremiah Daley, who were brothers and partners, conducted a general store in Uxbridge.    On April 25, 1889, they purchased a parcel of real estate known as the "Tucker Place," the consideration being $3,000.    Title was taken in the names of Dennis Daley and "Jerry" Daley; $500 was paid in cash, and a mortgage for $2,500, signed and executed by them and their respective wives, was given to the grantors.    The $500 was paid out of the "general store fund" and nothing more was paid on the principal of the mortgage during the existence of the partnership.    Prior to this purchase the partners rented and occupied adjoining apartments in the "Tucker Place," which was a two family house, and the rentals were paid out of "the general store" in cash.    On August 24, 1896, the partners purchased another parcel of real estate, known as the "Post Office Block," for $5,000, taking title in their names, Jeremiah Daley and Dennis Daley. They gave the grantors a mortgage for the entire purchase price and nothing was paid on the principal of this mortgage during the existence of the partnership.

In January, 1898, Jeremiah Daley died testate, leaving a widow and four minor children. His will was duly probated on February 18, 1898. By its terms Dennis Daley, his partner, was named as executor. The will contains this clause: "I give devise and bequeath all my estate real personal and mixed unto James Daley (my brother) of said Uxbridge, but in trust nevertheless for the following purposes namely: one-third of said personal estate, and a life interest in one-third of said real estate, to my wife Mary Ann Daley. All the rest and residue of my estate to be given to my children in equal shares to be managed in such way as the said Trustee might think to the best interest of each, during their natural lives, and, upon the death of either Child without heirs of his body, his share to be vested in the said Trustee for the benefit of the remaining and surviving children equally. All of the foregoing estate devised to my wife and children is to be managed by James Daley, trustee of this will, in such way as he might think to the best interest of each."

Dennis Daley declined to act as executor, and the attorney who had done legal work for the partnership was appointed administrator with the will annexed. As the result of the inventory of the partnership assets which the administrator took, he found that the amount due the estate from Dennis Daley was $3,329.36. This sum included one half of the value of the equity of both parcels of real estate, which was fixed at $500. As administrator, he took a note from the surviving partner for the amount found due, which was paid principally in sums charged for rent of the tenement, which the widow and children of Jeremiah Daley continued to occupy, and for goods purchased by them at the store. This note was paid in full on January 1, 1906.

After this note was paid, Dennis Daley, the surviving partner, "assumed ownership and control of said parcels of real estate." He made repairs, paid all taxes, insured the properties, paid the mortgage interest and eventually paid the mortgage principals and received discharges. The widow and children of Jeremiah Daley continued to live

in the "Tucker Place" and paid rent therefor to Dennis Daley up to sometime in 1904, when "she was ordered to vacate" by Mary L. Baker, one of the petitioners and a daughter of Dennis Daley. "Mrs. Baker said to the widow . . . 'Pa told me to tell you to vacate.' About a month after this she moved out." Sometime in 1932 "in order to clear the title to said real estate on the records in the Registry of Deeds and Probate Court" the respondents were asked to execute a quitclaim deed to the petitioners "in order to remove the cloud on the title." Harry Daley was the only respondent who complied. From September 1, 1900, to the date when this proceeding was brought "neither the trustee of the estate of Jeremiah, nor the beneficiaries under the trust, or any other person made any claim to title or ownership to said properties, and during all of this time said Dennis, and since his death on January 22, 1929, his widow and children have claimed ownership, held possession, and exercised dominion over the properties as devisees under his will. They received and kept as their own the rents, profits and income thereof up to the present time."

The trustee named in the will of Jeremiah Daley never qualified as such but, after this proceeding was brought, one of the defendants, Alice J. Daley, was appointed as such trustee and permitted to intervene in her official capacity in this suit. No other trustee was ever appointed by the Probate Court.

The assets of the partnership exceeded its liabilities and the two parcels of real estate were not needed to pay claims against the partnership. The affairs of the partnership, in regard to its personal property, bills receivable and payable, were adjusted and settled by the administrator with the will annexed of Jeremiah Daley and the surviving partner, both acting fairly, openly and in good faith. "There was nothing fiduciary between the surviving partner and the dead partner's representative or his trustee or his devisees relative to the real estate owned by the partners after the partnership affairs had been settled." In conclusion the judge found that the petitioners "have acquired a title by adverse possession to the undivided one-half part of each

of said two parcels of land, formerly owned by said Jeremiah Daley. From these facts it appears that the plaintiffs' *record* [italics ours] title to said two parcels of real estate is clouded by the possible interests of the defendants therein and therefore the plaintiffs are entitled to a decree removing the same."

The Land Court has original jurisdiction of suits in equity to quiet title or establish the title to land or to remove a cloud from the title thereto. G. L. (Ter. Ed.) c. 185, § 1 (*k*). A petition to remove a cloud from the title to land affected cannot be maintained unless both actual possession and the legal title are united in the petitioner. If a disseisin has continued for the full statutory period, not only is any right of entry barred but by the operation of the statute of limitations the time within which a real action must be brought has passed and the estate has vested in the disseisor as effectually as if originally conveyed to him. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 208. *Solis* v. *Williams*, 205 Mass. 350, 354. See *Proprietors of Jeffries Neck Pasture* v. *Ipswich*, 153 Mass. 42. Unless the petitioners have acquired title by adverse possession to the one-half part of the real estate standing in the name of Jeremiah Daley, the petition must fail.

The will of Jeremiah Daley devised all his real estate to a trustee who never qualified. Title to real estate devised by will passes directly, on probate of the will, to the devisee and relates back to the instant of the death of the testator. *Lobdell* v. *Hayes*, 12 Gray, 236. *Drury* v. *Natick*, 10 Allen, 169, 182. *Busiere* v. *Reilly*, 189 Mass. 518. One named as trustee of real estate in a testamentary trust, being a devisee of the legal title, obtains that title upon the probate of the will. He becomes a trustee by virtue of his being so named in the will. *Tainter* v. *Clark*, 13 Met. 220, 227. *National Webster Bank* v. *Eldridge*, 115 Mass. 424, 428. *Parker* v. *Sears*, 117 Mass. 513, 522. *Ellis* v. *Hunt*, 228 Mass. 39, 44. *Monk* v. *Everett*, 277 Mass. 65, 70. See *Guaranty Trust Co., petitioner*, 248 Mass. 319. The fact that the named trustee has not qualified by giving such bond as may be required does not change this. See *Coates*

v. *Lunt*, 213 Mass. 401, 404. Of course, one named as trustee cannot be compelled to accept the office and may disclaim. *Carruth* v. *Carruth*, 148 Mass. 431. *Sells* v. *Delgado*, 186 Mass. 25, 28. See *Loughery* v. *Bright*, 267 Mass. 584, 588. And although a disclaimer may be informal, it should be unequivocal. Otherwise it will be presumed that the trustee has accepted the gift of the property. The presumption will prevail especially after a long lapse of time even though the named trustee may have done nothing in the execution of the trust. Perry, Trusts (7th ed.) §§ 259, 267, 270, 271. In the case at bar the named trustee neglected to qualify. See *McGuire* v. *Devlin*, 158 Mass. 63. Recently the Probate Court has appointed a trustee. The trial judge in his findings states: "It seems to me that the real question in this case is whether or not the facts warrant a finding of a title acquired by adverse possession by the petitioners and their predecessor in title, Dennis Daley, to the one-half interest devised to the trustee under the will of said Jeremiah Daley." And he found that they had acquired title by adverse possession "to the undivided one-half part . . . formerly owned by said Jeremiah Daley."

If there is an adverse possession as to a trustee, and there is no fraud or concealment, and the *cestui que trust* is under no disability, the possession must be regarded as adverse both to the trustee and to the *cestui que trust*, and the time which would bar the legal right is equally effectual to bar the equitable right. See G. L. (Ter. Ed.) c. 260, § 25; *Attorney General* v. *Federal Street Meeting-house*, 3 Gray, 1, 62; *Merriam* v. *Hassam*, 14 Allen, 516, 522, 523; *Taft* v. *Decker*, 182 Mass. 106, 110. The children of the testator were minors at the time of his death, and consequently under a disability. But even if the youngest child was but a day old, such child is now barred. The ten year grace permitted by G. L. (Ter. Ed.) c. 260, § 25, in which to bring an action, would expire at the latest in 1929.

But a difficulty is presented by the terms of the will of Jeremiah Daley, which made no express provision for the ultimate disposition of his real estate. The trust which was created by that instrument was for the lives of the widow

and children, "and, upon the death of either Child *without heirs of his body* [italics ours], his share to be vested in the said Trustee for the benefit of the remaining and surviving *children* equally." The will is silent as to what is to become of the remainder after the life estate of the widow unless it falls into the residue of the estate and is then held in trust for the benefit of the children during their lives. Nothing is said as to what is to become of the shares in which the children have beneficial life estates, in the event that any child dies leaving heirs of his body. It would seem that the testator intended that in this latter event, the share of the deceased child should go to the heirs of the body of that child. *Parker* v. *Parker*, 5 Met. 134, 139. *Donnell* v. *Newburyport Homœopathic Hospital*, 179 Mass. 187, 189. To construe the will as having made no disposition, express or implied, of the share of "either Child" upon his death leaving heirs of his body, would result in intestacy, which would conflict with the rule that the presumption is against intestacy. *Wentworth* v. *Bell*, 249 Mass. 120, 122. *Saucier* v. *Saucier*, 256 Mass. 107, 111. *Lyman* v. *Sohier*, 266 Mass. 4, 8.

We do not think that it is necessary to decide the precise status of the remainders after the life estates resulting from this construction of the will, that is, whether contingent and in fee tail, with a reversion, or contingent and in fee simple. See *White* v. *Woodberry*, 9 Pick. 136; *Corbin* v. *Healy*, 20 Pick. 514, 515; *Sims* v. *Pierce*, 157 Mass. 52, 54; *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, 578; *Merchants National Bank of New Bedford* v. *Church*, 285 Mass. 217, 222; G. L. (Ter. Ed.) c. 184, § 5. For whatever may be the nature of the remainder, it is settled that the remaindermen, having no right to possession until the death of the life tenants, or not being bound to enter until then, and the reversioner, having no right to possession until the termination of the interest on which his interest depends, are not barred by the adverse possession which has resulted against the trustee and the life tenants. *Wells* v. *Prince*, 9 Mass. 508. *Tilson* v. *Thompson*, 10 Pick. 359. *Miller* v. *Ewing*, 6 Cush. 34, 41. *Isbell* v. *Greylock Mills*,

231 Mass. 233, 235, 236. *Nickerson* v. *Nickerson*, 235 Mass. 348. G. L. (Ter. Ed.) c. 260, §§ 22, 23, 26, 29.

The position of the petitioners is that they are the owners of the entire parcels involved. If one is in possession of real estate claiming the whole interest and by adverse possession he acquires any estate, it must be a fee simple. *Commonwealth* v. *Dudley*, 10 Mass. 403, 408. On this record the petitioners have acquired no legal title to that part of the real estate which they claim by adverse possession and accordingly have no standing to maintain their petition. The final decree must be reversed and a final decree is to be entered dismissing the petition, with costs to the respondents.

*Ordered accordingly.*