ALICE J. DALEY, trustee, & others *vs.* ELIZABETH R. DALEY
& others.

Worcester.    September 24, 1940. — February 24, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Practice, Civil,* Premature proceeding.  *Adverse Possession.  Real Property,* Remainder, Adverse possession.  *Devise and Legacy,* Acceptance by beneficiary.  *Trust,* Discretionary powers of trustee.

Until a devisee under a will clearly and unequivocally renounces the . devise, acceptance is presumed.

The remainderman of real estate following a life estate had no right, after the life tenant had lost his estate by adverse possession by a third person but while the life tenant was still living, to enter upon the premises and maintain a writ of entry; he must wait until the expiration of the life estate.

By a provision in a will giving real estate to the testator's brother for the benefit of the testator's wife and children "to be managed by" the brother, "trustee of this will, in such way as he might think to the best interest of each," it was not intended that the trust should be exercised by the brother only.

WRIT OF ENTRY in the Land Court dated July 3, 1939.

The case was heard by *Smith,* J.

*F. W. Morrison,* for the demandants.

No argument nor brief for the tenants.

Cox, J.. This is a writ of entry in the Land Court brought on July 3, 1939, by the alleged trustee under the will of Jeremiah Daley, by William J. Kearnan, a great-grandson of said Daley, by his guardian but in his own right, and by Hazel M. Daley and Ruth Kearnan who are granddaughters of the said Daley, against the heirs at law and next of kin of Dennis Daley, who was a brother of the said Jeremiah and who died on January 21, 1929, and of his deceased widow, Nellie M. Daley. The decision was adverse to the demandants who appealed from the decision and order of judgment. See *Boston* v. *Lynch,* 304 Mass. 272, 274. The case was tried upon an agreed statement of all the facts "material to the issues . . . [which] may be considered by the court as established. . . . Inferences, deductions and conclusions of fact may be drawn from the agreed facts . . . and the provision of G. L. c. 260, §§ 21–31, inclusive, are by reference incorporated in and made a part hereof." See *Frati* v. *Jannini,* 226 Mass. 430; *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–109.

It appears from the agreed facts that Jeremiah Daley died in this Commonwealth on February 10, 1898, leaving a will which was duly admitted to probate. The demandant Alice J. Daley was appointed trustee under this will on April 2, 1937. Jeremiah Daley left a widow and four minor children, all of whom are now living. He died seised in fee of an undivided half interest as tenant in common with the said Dennis Daley, in the land which is the subject matter of this controversy.

The will gave everything to the testator's brother, James, as trustee, "but in trust nevertheless for the following purposes namely: one-third of said personal estate, and a life interest in one-third of said real estate, to my wife . . . . All the rest and residue of my estate to be given to my children in equal shares to be managed in such way as the

said Trustee might think to the best interest of each, during their natural lives, and, upon the death of either Child without heirs of his body, his share to be vested in the said Trustee for the benefit of the remaining and surviving children equally. All of the foregoing estate devised to my wife and children is to be managed by James Daley, trustee of this will, in such way as he might think to the best interest of each." It contained no provision for the disposition of the remainder.

The widow and four children of Jeremiah Daley "neglected for more than twenty years to claim their life estates . . . neglected to enter upon the aforesaid premises as life tenants for more than twenty years and at the end of said period, to wit, February 10, 1918, they lost their right of entry as life tenants and the statute of limitations thereafter barred them from the use of a writ of entry and left them without a remedy to recover their life estates. The remaindermen or reversioners as the case may be on said February 10, 1918, acquired a right to make an entry and recover possession of said premises through the use of a writ of entry."

The trustee named in the will never qualified. Up to the time of his death, Jeremiah Daley lived in one of the houses on the premises in question and his widow and children continued to occupy it thereafter for about five years and paid rent to Dennis Daley. In 1904, he demanded that the widow and children vacate, and they went to live elsewhere. "The surviving copartner [the said Dennis] as shown by the ouster of the widow and children in 1904 took complete possession of . . . [the] real estate following the death of Jeremiah Daley . . . collected the rents, enjoyed the full use . . . and the earnings thereof; and the mortgages which the two brothers had placed thereon were discharged by him . . . [as of record]."

Dennis Daley died on January 21, 1929, "and the tenants are his only heirs at law and next of kin and the only heirs at law and next of kin of his widow, Nellie M. Daley, . . . deceased, and at present are collecting the rents from . . . [the] land . . . ." On November 10, 1936, the

tenants in this action brought a petition in equity against the widow and four children of Jeremiah Daley for the purpose of removing a cloud on the title to the premises in question "claiming to have acquired by adverse possession all the right, title and interest in said parcels of land of the late Jeremiah Daley." (See *Daley* v. *Daley,* 300 Mass. 17.) The tenants "do not now claim any rights" under the deed of Harry Daley, one of the children of Jeremiah Daley, that is referred to in that opinion (see page 20). (The agreed facts contain recitals of what was decided by this court in that case.)

On May 2, 1939, Alice J. Daley, "Trustee," William J. Kearnan, by his guardian, Ruth Kearnan and Hazel M. Daley made open, peaceable and unopposed entries upon the land in question, as evidenced by instruments recorded in the appropriate registry of deeds.

"The statute of limitations which bars the recovery of their life estates by the widow and children of said Jeremiah Daley which they suffered to run by remaining out of possession for more than twenty years did not become effective at the earliest until February 10, 1918, twenty years from the date of the death of said Jeremiah Daley." If the ten years grace extending the limitation period in case of minors or persons under disability, permitted by G. L. (Ter. Ed.) c. 260, § 25, is applicable to Hazel M. Daley and Ruth Kearnan, it is conceded that they made entry and brought this writ within the time required by law, and it is conceded that William J. Kearnan made his entry and brought this writ within the time prescribed by the statute of limitations, "if applicable to him."

It was decided in *Daley* v. *Daley,* 300 Mass. 17, that the petitioners in that case had acquired no legal title to the one half of the real estate in question, which they claimed by adverse possession, and had no standing to maintain their petition; that the will of Jeremiah Daley made no provision for the remainder after the life estate of the widow, unless it falls into the residue of the estate and is then held in trust for the benefit of the children during their lives, and no provision for the shares in which the children

have beneficial life estates in the event that any child dies leaving heirs of his body. It was said, at page 23: "It would seem that the testator intended that in this latter event, the share of the deceased child should go to the heirs of the body of that child." The precise status of the remainders was not decided. But it was further said, at page 23: "it is settled that the remaindermen, having no right to possession until the death of the life tenants, or not being bound to enter until then, and the reversioner, having no right to possession until the termination of the interest on which his interest depends, are not barred by the adverse possession which has resulted against the trustee and the life tenants."

Three of the children of the testator have no children. The fourth is the father of Hazel M. Daley and Ruth Kearnan, and the grandfather of William J. Kearnan. We disregard, as did the trial judge, the statement in the agreed facts to the effect that the remaindermen or reversioners, as the case may be, on February 10, 1918, acquired a right to make an entry and recover possession of the premises by means of a writ of entry on the ground that this is a statement of law and not of fact.

The judge of the Land Court ruled that the writ in the case at bar was prematurely brought, found for the tenants and ordered judgment accordingly, but without prejudice to the right of the demandants to bring another writ when their right of entry has accrued upon the death of all the life tenants. There was no answer in abatement. See G. L. (Ter. Ed.) c. 231, § 20.

We think it clear that the demandant trustee has no standing to maintain this writ. The right of any trustee under the will to maintain the writ is barred by the operation of the statute of limitations. *Daley* v. *Daley*, 300 Mass. 17, 22. It is unnecessary to determine the status of the demandant William J. Kearnan for if it should be determined that his mother and aunt are entitled to maintain the writ in their own right, then, by the construction of the will that has been intimated, they would be entitled to judgment for their interests in the real estate. G. L. (Ter.

Ed.) c. 237, § 10. *Dewey* v. *Brown*, 2 Pick. 387. *Swan* v. *Stephens*, 99 Mass. 7. If it should be determined that the writ is prematurely brought, his status is of no consequence.

It is apparent from the agreed facts that the parties rely upon the decision in *Daley* v. *Daley*, 300 Mass. 17. At least it can be said that the tenants do not now contend that they have acquired by adverse possession anything more than the life estates of the widow and children of the said Jeremiah Daley. The statement appears that the widow and children neglected to enter upon the premises as life tenants for more than twenty years, and that at the end of that period "they lost their right of entry as life tenants and the statute of limitations thereafter barred them from the use of a writ of entry and left them without a remedy to recover their life estates." It also appears that "The surviving copartner [Dennis] as shown by the ouster of the widow and children in 1904 took complete possession of both of said parcels of real estate . . . ." We cannot adopt the statement to the effect that the earlier opinion "determined that the tenants (petitioners therein) had acquired no legal title to the aforesaid premises by adverse possession." It was decided in that case that the petitioners had not acquired title by adverse possession to the entire fee, that is, to the one-half part of the real estate standing in the name of Jeremiah Daley. It was pointed out, however, that although the children of the testator (Jeremiah) were minors at the time of his death and consequently under a disability, "even if the youngest child was but a day old, such child is now barred" (page 22). It was also pointed out that the remaindermen were not barred "by the adverse possession which has resulted against the trustee and the life tenants" (page 23). Reference was made to the generally accepted rule that if a disseisin has continued for the full statutory period, not only is any right of entry barred but by the operation of the statute of limitations the time within which a real action must be brought has passed "and the estate has vested in the disseisor as effectually as if originally conveyed to him" (page 21). The decision in the case at bar must proceed upon the theory

that the life tenants under the will of Jeremiah Daley lost their estates by operation of the statute of limitations, and that those estates had become vested in the heirs at law and next of kin of Dennis Daley and of his widow.

1. The demandants contend that the life tenants did not accept the life estates that were devised to them; that the life estates lapsed, or that they became merged with the remainders. As to these contentions, it is to be borne in mind that the life tenants, so called, were beneficiaries under a trust established by the testator for the term of their respective lives. When the testator died, he left a widow and four minor children, the youngest of whom was less than two years of age, and the oldest, less than twelve. If we assume, without deciding, that the beneficiaries were under any obligation to signify their acceptance of the devises in trust, it does not appear from the agreed facts that they had any opportunity to do so. See *Hidden* v. *Hidden*, 103 Mass. 59, 61; *McGivney* v. *McGivney*, 142 Mass. 156. At best, the life tenants, so called, had but an equitable title which would not have enabled them to maintain a writ of entry. *Packard* v. *Marshall*, 138 Mass. 301. *Webster* v. *Gilman*, 1 Story C. C. 499. Furthermore, it appears from the earlier decision that in 1932 the life tenants, except for one, refused to execute a quitclaim deed "in order to remove the cloud on the title." Although the trustee named in the will never qualified, nevertheless one of the life tenants was appointed as such in 1937. Finally, the life tenants contested the petition for the alleged removal of a cloud on the title, the subject matter of the earlier decision. In the circumstances, we are of opinion that the agreed facts do not require a conclusion that will support the contentions now under consideration. It is well settled that devisees under a will have a right to elect whether or not they will accept a devise. Until they actually renounce their assent to the provisions of the will which are apparently beneficial to them, it will be presumed. *Stebbins* v. *Lathrop*, 4 Pick. 33. *Hidden* v. *Hidden*, 103 Mass. 59. See *Knapp* v. *Meehan*, 287 Mass. 573; *Smith* v. *Livermore*, 298 Mass. 223, 245–247; *Webster* v. *Gilman*,

1 Story C. C. 499. But a renunciation or a disclaimer of a devise must be clear and unequivocal, *Stebbins* v. *Lathrop*, 4 Pick. 33; *Perry* v. *Hale*, 44 N. H. 363, 365, and it has been said that the burden is upon the party claiming nonacceptance to support his contention. *Bacon* v. *Barber*, 110 Vt. 280.

The demandants contend, however, that as the remaindermen were not barred by the adverse possession which has resulted against the trustee and the life tenants, they had a right to enter, as it appears they did, upon the demanded premises and to bring their writ of entry before the expiration of the limitation period applicable to them "following the disseisin of the life tenants." In support of this contention they rely upon cases commencing with *Wells* v. *Prince*, 9 Mass. 508.

When the Revised Statutes were adopted, an entirely new chapter, 119, on the limitation of real actions and rights of entry, effective on December 31, 1839, was enacted. This chapter materially changed the statute law as to the limitation of real actions, and some of its sections were taken substantially from the English statute, 3 & 4 Wm. IV, c. 27, noticeably § 3, which now appears in substantially the same form in G. L. (Ter. Ed.) c. 260, § 23. At the same time Rev. Sts. c. 101 was enacted. The commissioners' notes disclose that by said c. 101, it was proposed to abolish all writs of right and all but one of the writs of entry. See now G. L. (Ter. Ed.) c. 237. Rev. Sts. c. 59 also made important changes. By § 6 it was provided that a conveyance made by a tenant for life or years of a greater estate than he possessed or could lawfully convey, should not work a forfeiture of his estate, but should pass to the grantee all the estate which such tenant could lawfully convey. See now G. L. (Ter. Ed.) c. 184, § 9. Section 7 of said c. 59 provided that no expectant estate should be defeated or barred by any alienation or other act by the owner of the precedent estate or by any destruction of such precedent estate by disseisin, forfeiture, surrender or merger. See now G. L. (Ter. Ed.) c. 184, § 10. The commissioners, in their notes on § 6, pointed out that a feoff-

ment by a tenant for life would, by common law, convey a
fee simple to the feoffee, but that the conveyance produced
a forfeiture of the estate for life, and that the fee simple
thus created might be defeated by the entry or the action
of the remaindermen or reversioner; that it well might be
doubted whether any conveyance in common use in this
Commonwealth would be deemed to be a feoffment so as to
produce a forfeiture of the estate for life, but that if it did,
"as this effect is founded upon reasons derived from the
feudal law of tenures, which have but little application to
our present usages and laws, this section is respectfully
proposed for the purpose of abolishing the rule, and re-
moving all doubts upon the subject." As to said § 7, it is
apparent from the notes of the commissioners that one
important purpose to be accomplished was to protect contin-
gent remainders. Section 8 of said c. 59, see now G. L.
(Ter. Ed.) c. 184, § 11, provided that §§ 6 and 7 should not
be construed to prevent the barring of estates tail in the
manner provided in c. 59, "nor to prevent an expectant
estate from being defeated in any manner provided for or
authorized by the party creating the estate."

Before these important changes were made in our stat-
ute law, in the case of *Wells* v. *Prince*, 9 Mass. 508, decided
in 1813, it was held that although a devisee for life refuses
to accept the estate devised, "and the remainder-man
thereby acquires an immediate right of entry," yet he is
not obliged to avail himself of his right so accruing but he
may enter after his second right accrues by the death of
the tenant for life. This was followed by the case of *Walling-
ford* v. *Hearl*, 15 Mass. 471, decided in 1819. In that case
the tenant for life had been disseised and the disseisor and
his heirs continued in possession until the death of the ten-
ant for life. The opinion by Parker, C.J., was that the
demandant's right of entry accrued on the death of the
tenant for life. "It is said that he might have entered
before, in consequence of the disseisin of the tenant for
life. If he might, the law imposed no obligation upon him
to do so. . . . It is settled, in the case of *Wells* vs. *Prince* . . .
that, although the reversioner may enter before the death

of the tenant for life, if she refuse to enter, yet that he may waive that right, and enter after her death. That case is the same in principle with the one before us. . . . If tenant for life acknowledge a fine for a longer time than for the life of the tenant for life, the fine may be good; but it is a forfeiture of the estate, and he in reversion or remainder may enter. Yet he is not obliged so to do; for he may wait the termination of the estate for life, and has five years after that." (Pages 472–473.) In *Tilson* v. *Thompson,* 10 Pick. 359, decided in 1830, the tenant relied upon an adverse possession of more than forty years. The demandant had title by purchase of the reversion of the heirs expectant on the termination of the widow's life estate under her assignment of dower. It was said by Shaw, C.J., at page 362, that during the whole period relied on as a period of adverse possession, the demandant either had no right of entry or was not bound to exercise it, and that the statute of limitations did not run against him; that it was a well settled rule of law that one claiming in reversion, though he may, if he will, take notice of any disseisin done to the tenant of a particular estate, he is not obliged to do so, but may wait until his right of entry accrues, upon the death of the tenant for life, and may then enter how "long soever" the particular tenant may have been disseised. In *Miller* v. *Ewing,* 6 Cush. 34, decided in 1850, one Day had been in open and sole occupation of the premises in question from 1819 to 1839. To 1823, he had possession in the right of his wife of her one fifth, which was the subject of the controversy, and it was said that his possession was adverse to no one. The life estate of the widow continued to 1833, and it was said that the presumption was that he held under her. If he did not, he was a wrongdoer as to her, but his possession was not necessarily adverse to the reversioners and did not operate to disseise them, "but at their election." The right of entry of the reversioners accrued at the death of the tenant for life in 1833, and even though she may have forfeited her life estate by some previous act, so that the reversioners might have entered earlier, still they were not bound to do so, but had a right

to enter then, how "long soever" the particular tenant might have been disseised; and the statute of limitations begins to run from that time. *Tisdale* v. *Brabrook*, 102 Mass. 374, decided in 1869, was a petition to require the respondents to show cause why they should not bring an action to try their right to real estate in the possession of the petitioner. The respondents disclaimed any present estate or right of entry, admitted that the petitioner was seised of an estate for the life of another who was living, and claimed only an estate in remainder after her death. It was said, at page 375: "Nor has it ever been true that a person having an estate in remainder after a tenancy for life could maintain an action at law to try his title till after the termination of the estate for life. . . . [Citing *Wells* v, *Prince, Wallingford* v. *Hearl, supra.*] Until then, there was no disseisin or intrusion upon which he could declare." In *Mixter* v. *Woodcock*, 154 Mass. 535, decided in 1891, the life tenant, believing that she owned the premises in fee, had mortgaged them to one who had the same belief. It was held that her possession was not, in its nature, adverse, and it was said: "If the mortgages executed by her may be regarded as acts of disseisin, so that the reversioner could have entered, he was not obliged to do so, but could wait until his right of entry accrued upon her death; and neither the widow nor those who claim under her would acquire any rights against him, or title to the property, by virtue of his or their occupation in the mean time" (page 536), citing the *Wells, Wallingford, Tilson* and *Miller* cases.

In *Marcy* v. *Marcy*, 6 Met. 360, decided in 1843, it was said that in *Wallingford* v. *Hearl, supra,* the court determined that where a tenant for life is disseised and the disseisor and his heirs continue in possession forty years, and until the death of the tenant for life, the reversioner's right of entry commenced at the death of the tenant for life, and that "the same doctrine was maintained in the previous case of *Wells* v. *Prince* . . . [*supra*]."

By the common law, the particular estate and the remainder made up a whole, and the particular estate was said to support the remainder. Livery of scisin had to be

made of the particular estate whenever a freehold remainder was created, and such livery made to the tenant of the particular estate related and enured to him in remainder as both were but one estate in law. 2 Black. Com. 171. Persons in possession without right as tenants by disseisin, deforcement, abatement and intrusion could transfer the possession and freehold by livery of seisin. 4 Kent's Com. 484. Estates for life were liable to forfeiture not only for waste but by alienation in fee, as such an alienation amounted to a renunciation of the feudal relation. Alienation by feoffment with livery of seisin or by matter of record, as by fine or recovery of a greater estate than the tenant for life was entitled to, by divesting the seisin and turning the estate of the rightful owner into a right of entry operated as a forfeiture of an estate unless the person in remainder or reversion was a party to the assurance. 4 Kent's Com. 484. And the disseisin which was produced by a feoffment answered every description of an actual disseisin. 4 Kent's Com. 485.

We are of opinion that the court must have had in mind these ancient doctrines of the common law in the discussion of the principles involved in the cases just referred to, although in the case of *Jewett* v. *Jewett*, 10 Gray, 31, decided in 1857, it may have lost sight of them for the moment. In that case the testator had devised the premises in question to one for life with the remainder to the demandant and others. The tenant and his grantor had been in peaceable and uninterrupted possession of the premises from the time of their sale for the purpose of paying debts under license of court to the date of the writ. The sale, however, was not effective for the reason that the tenant failed to prove that the receipts of the sale had been accounted for properly. There was an old statute which provided for the bringing of actions to recover real estate sold under such license. It was said that, "The demandant had no seisin of these premises, nor any right of entry, which would have enabled him to maintain this action, until after the death of his father, the tenant for life."

But we are of opinion that in the case at bar these older

cases to which reference has been made are not controlling. "It is held everywhere that adverse possession of real estate for the period prescribed in the statute of limitations not only bars a suit to recover it, but gives a good title against the former owner." *Currier* v. *Studley*, 159 Mass. 17, 22. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 208. "Where an occupant of land has had undisturbed adverse possession for the period required to bar an action by the real owner for its recovery, the occupant has acquired a good title." *Mulligan* v. *Hilton*, 305 Mass. 5, 10, and cases cited. *Baker* v. *Oakwood*, 123 N. Y. 16. G. L. (Ter. Ed.) c. 260, § 21, provides that an action for the recovery of the land shall be commenced or an entry made thereon, only within twenty years after the right of action or of entry first accrued, or within twenty years after the demandant or the person making the entry, or those under whom they claim, have been seised or possessed of the premises, except as hereinafter provided. Provision is made in other sections of said chapter for cases where the person entitled to a right of entry or of action is under disability. Section 22 provides that if such right of title first accrued to an ancestor or predecessor of the person who brings the action or makes the entry, or to any other person under whom he claims, the twenty years shall be computed from the time when the right or title so first accrued. But by § 23 the right of entry or of action to recover land shall be held to have first accrued at the times respectively "hereinafter mentioned: First, if a person has been disseized, at the time of such disseisin. Second, if he claims as heir or devisee of a person who at his death was seized, at the time of his death; but if a tenancy by the curtesy or other estate intervened after the death of such ancestor or devisor, at the time when such intermediate estate expired or would have expired by its own limitation. Third, if there has been such intermediate estate or if a person claims under a remainder or reversion, so far as his right is affected by the limitation prescribed in said sections [21 to 31, inclusive], at the time when the intermediate or precedent estate would have expired by its own limi-

tation, notwithstanding any forfeiture thereof for which he might have entered at an earlier time. This clause shall not prevent a person from entering if entitled so to do by reason of any forfeiture or breach of condition; but in such case, his right shall be held to have accrued when the forfeiture was incurred or the condition was broken. Fourth, in all cases in which no other express provision is made, at the time when the claimant or the person under whom he claims first became entitled to the possession of the premises under the title upon which the entry or the action is founded."

From the history of these statutory sections, and the state of the law at the time they were first enacted, it would seem that the right of entry or of action had been definitely determined to the exclusion of any rights that might have existed theretofore. Where there is an intermediate estate, as there was in the case at bar, the only exception provided for is that a person may enter at another time if "entitled so to do by reason of any forfeiture or breach of condition; but in such case, his right shall be held to have accrued when the forfeiture was incurred or the condition was broken." As already pointed out, it is provided by G. L. (Ter. Ed.) c. 184, §§ 9 and 10, and these provisions have been in force since 1839 by virtue of Rev. Sts. c. 59, §§ 6 and 7, that a conveyance by a tenant for life or years, which purports to grant a greater estate than he possesses - or can lawfully convey, shall not work a forfeiture of his estate, but shall pass to the grantee all the estate that such tenant can lawfully convey; and that no expectant estate shall be defeated or barred by an alienation or other act by the owner of the precedent estate, nor by the destruction of such precedent estate by disseisin, forfeiture, surrender or merger, subject, however, to the limitation contained in § 11 of said chapter that the provisions of §§ 9 and 10 shall not prevent an expectant estate from being defeated in a manner provided for or authorized by a person creating such an estate.

If, as it is the law, adverse possession of real estate for the period described in the statute of limitations, not only

bars an action to recover, but gives a good title against a former owner, it is difficult to see how the demandants have any right to maintain their writ upon the contention that they acquired such a right upon the disseisin of the life tenants. In *Baker* v. *Oakwood*, 123 N. Y. 16, the plaintiff had a remainder limited upon a life estate "which the defendant has absorbed in its adverse possession, and is not yet terminated," the life tenant being alive, and it was held that the plaintiff could not maintain her action to recover the remainder. See *McMichael* v. *Craig*, 105 Ala. 382; *Moore* v. *Luce*, 29 Penn. St. 260; *Higgins* v. *Crosby*, 40 Ill. 260; *Dawson* v. *Edwards*, 189 Ill. 60; *Loven* v. *Roper*, 178 N. C. 581; *McCampbell* v. *Warrich Corp.* 109 Fed. (2d) 115, 118. A conveyance by the life tenant of his interest in real estate is good, and during the existence of the life estate the remainderman is not entitled to possession until the death of the life tenant in so far as the conveyance by the life tenant is concerned. *Deans* v. *Eldredge*, 217 Mass. 583, 588. As already pointed out, by statutory provision, a conveyance by a tenant for life which purports to grant a greater estate than he possesses or can lawfully convey, passes to the grantee the estate that such tenant can lawfully convey. G. L. (Ter. Ed.) c. 184, § 9. *Nickerson* v. *Nickerson*, 235 Mass. 348, 356. See *Mixter* v. *Woodcock*, 154 Mass. 535. It will be observed that in the *Nickerson* case it was said that during the life of the life tenant who had conveyed his estate "the owners of the reversion, although they might take notice of any disseisin by the tenant of the particular estate, were not obliged to do so and could wait until the right of entry accrued, when . . . [the life tenant] died. . . . The right of the heirs of his wife to bring an action did not accrue until the intermediate estate conveyed by . . . [the life tenant] had expired . . ., at which time the statute began to run against them." (Page 356.) The reference to any disseisin "by" the tenant of the particular estate may be significant inasmuch as the cases of *Tilson* v. *Thompson*, 10 Pick. 359, *Miller* v. *Ewing*, 6 Cush. 34, and *Wallingford* v. *Hearl*, 15 Mass. 471, are cited in support. It is apparent that the remark had

no direct or material bearing upon the point that was decided, but it well may be that the reference was intended to apply to the illustration in the *Wallingford* case of the situation where a tenant for life acknowledges a fine for a longer period than for the life of the tenant for life; that the fine may be good; but it is a forfeiture of the estate and he in reversion or remainder may enter. Yet he is not obliged to do so for he may await the termination of the estate for life.

It is true that by the provisions of G. L. (Ter. Ed.) c. 260, § 23, Third, where there is an intermediate estate, a person nevertheless may enter if entitled so to do by reason of any forfeiture or breach of condition. But in such case his right shall be held to have accrued when the forfeiture was incurred or the condition was broken.

These provisions as to forfeiture and breach of condition are substantially those appearing in 3 & 4 Wm. IV, c. 27, which were incorporated into our Rev. Sts. c. 119. Blackstone states as to forfeitures: "Lands, tenements, and hereditaments, may be forfeited in various degrees and by various means: 1. By crimes and misdemeanors. 2. By alienation contrary to law. 3. By non-presentation to a benefice; when the forfeiture is denominated a *lapse*. 4. By simony. 5. By non-performance of conditions. · 6. By waste. 7. By breach of copyhold customs. ˙ 8. By bankruptcy." 2 Black. Com. 267. Alienation by particular tenants by feoffment or fine also worked forfeiture as already pointed out. Disseisin of the life tenant does not appear to have been a ground of forfeiture, although a passage in 2 Co. Lit. 252, a, may have some significance in connection with some of the statements in our earlier cases, to which reference has already been made: "Littleton here speaketh of the forfeiture of an estate; and here it is to be knowen, that the right of a particular estate may be forfeited also, and that he that hath but a right of a remainder or reversion shall take benefit of the forfeiture. As if tenant for life be disseised, and hee levie a fine to the disseisor, he in the reversion or remainder shall presently enter upon the disseisor for the forfeiture. And so it is if

the lessee after the disseisin had levied a fine to a stranger . . . yet it is a forfeiture of his right." It would seem that the cause of the forfeiture in such a case was the fine and not the disseisin. This passage from Coke may bear particularly upon the illustration in *Wallingford* v. *Hearl*, 15 Mass. 471, 473.

When the provisions of §§ 9 and 10 of said c. 184 are considered, it would seem that there are few forfeitures or conditions broken that would entitle a remainderman to enter except those comprehended by § 11 of said c. 184 which limits the provisions of said §§ 9 and 10 so as to provide that estates in tail may be barred and that an expectant estate may be defeated in a manner "provided for or authorized by the person creating such estate." This lengthy consideration of the demandants' contention leads to the conclusion that they have no right to maintain their writ upon any theory that the life estates are not outstanding.

2. What has been said disposes of the contention of the demandants that, the title to the premises having vested in the trustee for the benefit of the life tenants in the circumstances disclosed by the agreed facts, their life estates "fell out of the trust" so that the trustee, at the end of the twenty years of adverse possession, held for the sole benefit of, the remaindermen. From what has been said, it is apparent that the estate that passed to the trustee to be held for the lives of the life tenants was lost as the result of adverse possession, and that the title has vested in the disseisors by virtue of the statute of limitations.

3. The final contention of the demandants is that the trust that was created was a personal one founded upon the trust and confidence which the testator meant to be exercised by one trustee only, his brother James. It is a general rule of law that where a power is created and given in a will or deed by words that clearly indicate that the donor of the power placed special confidence in the donee, so that the element of personal choice or selection is found, then the exercise of such a power must be confined to and exercised by the person or persons so selected, and ordinarily is not transmissible. *Sells* v. *Delgado*, 186 Mass. 25, 27,

, and cases cited. But we are of opinion that the facts in the case at bar do not bring it within this general rule. It does not appeár that the testator intended any such consequences as might follow from the application of the rule. See *Barbour* v. *Weld*, 201 Mass. 513, 521; *Mooers* v. *Greene*, 274 Mass. 243, 252.

*Decision affirmed.*