## Sadler's Estate.

Argued January 19, 1931. Before WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Albert A. J. Cohan,* for appellant.—Anna Sadler, by her letter of renunciation, did not renounce her right to act as cotrustee: McKallip's Est., 291 Pa. 304.

A cotrustee having renounced the right to act as such, may change her mind and be reinstated: Devlin's Est., 19 Pa. Dist. R. 431.

*David Wallerstein,* for appellee.—By her renunciation of the executorship of the estate of Rufus E. Sadler, appellant ipso facto renounced also her trusteeship: Strobel's Est., 2 W. N. C. 409; McKallip's Est., 291 Pa. 304; McIlvaine's Est., 1 Del. Co. R. 248; Ebert & Barnitz's App., 9 Watts 300.

The renunciation filed by Anna Sadler was expressly a renunciation of the office of executor and trustee.

The question whether Anna Sadler, having renounced as trustee, could revoke such renunciation is not before the court; in any event, no such right of revocation existed: Schwartz v. Wesoky, 281 Pa. 388; Naugle's Est., 268 Pa. 481; Scull's Est., 249 Pa. 57; Skeer's Est. (No. 1), 249 Pa. 288; Com. v. Parker, 294 Pa. 144.

OPINION BY MR. JUSTICE SIMPSON, April 13, 1931:

Aside from two suggestions to his wife,—which are not testamentary in character and do not affect the administration of his estate,—testator's will (evidently drawn by himself or some other layman) provides that "All that I have I leave to my trustees (hereinafter named)," with a "full power of sale, mortgaging, converting [and] purchase in everything" (except as to a single investment), in trust "to turn over the net proceeds in quarterly dividends (oftener if possible) of the estate of [evidently meaning, of my estate to] my wife Anna," with remainder to a specified nephew; and concludes: "My executors and trustees are to be my wife, Anna, and my brother, Charles A. Sadler." This is the

whole of the will, which, as may be observed, contemplates that the trust shall begin immediately upon his death, and continue, in the same hands, until final distribution of the principal.

After testator's death, the widow executed, acknowledged and delivered a letter, directed to the register of wills, in which she declared: "I do hereby renounce my right to letters testamentary upon the said estate, and request you to grant same to Charles A. Sadler as the sole executor and trustee." We do not know what actuated her in making that kind of a renunciation, but we do know therefrom that her desire then was that the brother should be sole trustee as well as sole executor, and that this, so far as concerned continuity of administration, was in accord with her husband's wishes as expressed in his will. Acting on her renunciation, the register granted letters testamentary to the brother only, and, upon the adjudication of his account, the auditing judge directed him to retain the balance in his hands "as sole trustee for the uses and purposes of the will." To this the widow excepted, alleging that the balance should have been awarded to her and the brother as cotrustees. The adjudication was confirmed by an equally divided court, the three dissenting judges declaring: (1) that, as the renunciation was in a letter to the register of wills, who had nothing to do with renunciations by trustees, the language referring thereto must be treated as surplusage; and (2), even if this was not so, the widow had the right to withdraw her renunciation of the trusteeship, at any time prior to the actual award of the assets to the brother as sole trustee.

Whether or not these contentions would be correct in ordinary cases, they certainly are not so, where, as here, the matter can be determined from the will itself. This is always the rule in will cases, except where some statute or public policy would be contravened; and its application to situations like the present was pointed out in a characteristically able opinion of the late Justice

282

SADLER, in McKallip's Est., 291 Pa. 304, 307-8. Speaking by him, we there said: "It is insisted that, since the duties of trustee and executor are separate and distinct, and appellant was by name designated in both capacities by the will, the implied revocation of her selection as executrix by the codicil, in which others are designated, to whom letters testamentary were granted, had no effect on her right to serve as trustee. It is true that these interests may be severable, and a renunciation by the nominee of the right to administer the estate may be ineffective, in so far as the right to serve as trustee is concerned [citing cases]. The will may indicate, however, that the trust was annexed to the office of executor [citing cases], in which case the withdrawal of one named from the latter position results in a forfeiture of the trusteeship...... As in other questions involving the interpretation of wills, the intent and purpose of the testatrix must be ascertained from a consideration of all the language used, and the document as a whole......be scanned with this in view. A consideration of the paper before us leads to the conclusion that Mrs. McKallip had no thought of creating distinct offices, but rather that the executors should act as trustees, and the labors imposed in settling the estate, managing the balance, paying the income, and distributing the principal, be carried out by" them.

As already shown, the present testator's will points to two desires as regards his trust estate: (1) that the same persons should continuously administer the trust from the time of his death until final distribution; and (2) that they should be his widow and his brother. Doubtless he knew, as every business man knows, that a change of administration often results in a change of policy, with consequent loss to the estate, especially where, as here, there is expressly given the "full power of sale, mortgaging, converting [and] purchase in everything," as above quoted. By declining to act as executor, the widow prevented the carrying out of one of the

above desires of testator. If she were permitted to act as trustee she would defeat the other also. We must, however, enforce his intentions so far as possible, and this we may do by sustaining the action of the court below, which provides for the continuity of administration which he intended; not otherwise can either of his desires be now enforced.

The decree of the court below is affirmed and the appeal is dismissed, the costs to be paid by the estate of testator.