Argued September 6; affirmed September 25, 1945

IN RE BUELOW'S ESTATE

NICKELSEN *v.* WILLIAMS

(161 P. (2d) 909)

*Sidney Teiser,* of Portland (Teiser & Keller, of Portland, on the brief), for appellant.

*Ira W. Carl,* of Portland, for respondent.

BRAND, J.

In this proceeding, C. D. Nickelsen filed in the county court objections to the Final Account of William E. Williams, executor of the estate of Elizabeth M. Buelow, deceased. By the will of the deceased, a trust was created. In his Final Account the executor asserts that he is the trustee to whom the trust property should be distributed upon the closing of the adminis-

tration. Nickelsen asserts that under the will he, Nickelsen, is the trustee to whom the executor should be ordered to deliver the trust property. The contest was transferred to the circuit court for trial; and from a decree in favor of Williams, the objector, Nickelsen, appeals.

Elizabeth M. Buelow died on the 16th day of October, 1941, leaving real and personal property of the estimated value of $40,000.00. Paragraph 6 of the will provides "the rest and residue of my estate, both real and personal, I give to my trustees" for the uses and purposes which are therein set forth. The will provides in part as follows:

"IX. I do hereby nominate and appoint C. D. Nickelsen to act as executor of this last will and testament and as trustee of the trust herein set up. If he be not living or able to serve at the time of my death, I do hereby appoint C. C. Lindley and if he be not living or able to serve at the time of my death, I do hereby appoint William E. Williams to act as executor and trustee under this Last Will and Testament."

At the time of the death of the testatrix, C. D. Nickelsen was the County Judge of Hood River County, and was therefore disqualified to act as executor under the will. Upon the filing of the petition of William E. Williams, Judge Nickelsen made an order reciting that he, Nickelsen, was disqualified by reason of his judicial office, reciting also the disqualification of C. C. Lindley and stating that "William E. Williams is the sole person named as executor by said Elizabeth M. Buelow, deceased, who is qualified and is a competent person to act as such executor." The order then provided that the will be admitted to probate and that letters testamentary issue to Williams "upon his tak-

ing the Oath of Office and giving the bond * * * to be approved by the Judge of this Court."

Upon the issuance to him of letters testamentary, the executor proceeded with the administration of the estate and on June 24, 1942, filed his final account. The concluding portion of that instrument reads in part as follows:

"* * * the executor herein is made trustee, under Paragraph VI of said will, of the rest and residue of the estate of the decedent during the life time of Gertrude E. Benson for the purposes specified * * *."

The executor then prayed for the usual order for the hearing of objections, settlement of the account and distribution in accordance with the will.

On July 13, 1942, Judge Nickelsen filed his "Contest of Final Account" and represented that "the will of said testator appoints the undersigned as trustee instead of William E. Williams." On the same day the contestant Nickelsen as county judge transferred the proceedings to the circuit court.

Subsequent to July 13, 1942, but prior to May 7, 1943, the estate became involved in extensive litigation, to which reference will later be made.

On the 7th day of May, 1943, the contestant Nickelsen filed the following:

### "WAIVER

Come C. D. Nickelsen and waives any objection to the closing of the above entitled estate that may be raised by reason of a certain instrument filed in this Court and cause on the 13th day of July, 1942."

The Final Supplemental Account to the Final Account was filed August 29, 1944.

On November 10, 1944, the contestant Nickelsen renewed his objections to the Final Account and alleged:

"That the present executor of the estate, William E. Williams, is not trustee under said will, and that the executor should not turn over to himself as trustee said property, since said executor is not named as trustee, but that said executor should be ordered and required to turn over the property of said estate to the objector herein, C. D. Nickelsen, trustee under the will."

BRAND, J.

It is the contention of the contestant Nickelsen that his ineligibility to serve as executor did not divest him of the office of trustee which he now claims. The executor Williams contends (1) that the question as to who is the trustee of the estate has already been decided by this court in the case of *Benson v. Williams,* 174 Or. 404, 149 P. (2d) 549, and is now *res judicata;* (2) that the appellant Nickelsen is not an interested party in the estate and consequently is not entitled to object to the final account; (3) that the appellant Nickelsen waived his right, if any, to the trusteeship; (4) that as county judge he was ineligible to serve as trustee; and (5) that the renunciation by Nickelsen of the executorship amounted also to a renunciation of the trusteeship.

■ In this case the only evidence concerning the intention of the testatrix is to be found in the will itself. Both parties agree that in the construction of the will the intention of the testatrix must control and that such intention can only be determined from the will as a whole. We agree. O. C. L. A. § 18-402; *Hansen v. Oregon Humane Society,* 142 Or. 104, 18 P. (2d) 1036; *Gildersleeve v. Lee,* 100 Or. 578, 198 P. 246, 36 A. L. R. 1166.

The appellant Nickelsen asserts as a proposition of law that where an executor is also trustee under a will, an ineligibility to, or a renunciation of, the executorship does not divest him of his appointive office of trustee, and that he is therefore qualified to serve in the latter capacity. Supporting authorities are cited. On the other hand the respondent Williams asserts that when a trust is annexed to the office of an executor the renunciation of the executorship is a renunciation also of the trust. Neither the proposition of the appellant nor that of the respondent can be applied as a rule of thumb, and neither one controls the decision in this case.

██ We think that the effect of an ineligibility to, or a renunciation of, an executorship upon the right to act as trustee depends in each case upon the nature of the trust duties created by the will and upon the intent of the testator concerning the exercise of those duties as manifested by the will. If the will manifests the intention that the duties of executor and trustee shall be kept separate and may be performed by different persons, then a renunciation of the one does not necessarily amount to a renunciation of the other.

The case of *Garner v. Dowling*, 58 Tenn. 48 (1872), cited by the appellant, is of this kind. The will of the testator appointed executors and also provided that certain property ''shall go into the hands of my executors as trustee * * *.'' The trustees were given discretionary powers wholly foreign to any duty as executors. The executors failed to qualify as such, and an administrator with the will annexed was appointed. The court held that the trust property should be placed in the hands of the trustees who were appointed by the will, and ''their failure to qualify as executors does not

*necessarily* remove them as trustees.'' (Italics ours.) It was properly held that the appointment by the court of the administrator c. t. a. did not constitute him trustee with the discretionary powers which were created only by the will. To have held otherwise would have been to confer upon a person appointed by the court and unknown to the testator, powers involving trust and confidence vested by the will in the persons named, in disregard of the intent of the testator. The case is distinguishable. In the Garner case the intent of the testator as to who should be trustee was clear. In the case at bar, the question for our determination is this: Who did the testratrix intend should be the trustee under the circumstances?

Appellant also cites *In Re Ripley*, 167 N. Y. S. 162. In that case the testator appointed Horne and two others as executors and trustees of his will. Horne, being an alien and residing in England, did not qualify as executor but did file his consent to act as one of the trustees. The question arose, as in the case at bar, on the filing of the final account of the executors. Objection was then made to the distribution of the trust fund to the three named trustees, one of whom was Horne. The court held that a declination of the executorship is not a declination of a trusteeship conferred by the will, but it added, ''The trusteeship given by the will * * * to Mr. Horne was not inseparably annexed to his office of executor.'' Here again it was clear that the testator intended that the trust, after closing of the estate in probate, should be administered by the named trustees in whom he had placed confidence. There was no uncertainty as to who those persons were. The same considerations which distinguish *Garner v. Dowling* from the one at bar are applicable to the Ripley case.

*Pomroy v. Lewis,* 14 R. I. 349, cited by the appellant is to the same effect. Appellant also relies upon a broad statement from Corpus Juris to the effect that a renunciation of an executorship does not divest one of his character as trustee, but the text and cases cited thereunder recognize that a different rule may be applied if the trust is "annexed to the office of executor." 23 C. J. 1030, § 85.

■ The rule established by the authorities appears to be that if the will, properly construed, has attached trust duties to the *office* of executor, as distinguished from attaching them to some person specifically named, then both functions must be performed by the same person. In that event failure to act as executor renounces the trust, and a new executor when appointed assumes both duties. See *Mullanny v. Nangle,* 212 Ill. 247, 72 N. E. 385; *Gray v. McCurdy,* 114 Tex. 217, 266 S. W. 396, 36 A. L. R. 320.

Here again the real problem was merely to determine what person *nominatim* was to serve as trustee according to the expressed intent of the testator, and these cases hold that the specific person may be identified as the one who holds the office of executor.

■ If the will properly construed appoints one as executor and as trustee and manifests the intention that the named individual shall exercise both powers, then we think that a disqualification for, or a renunciation of, the executorship would prevent acceptance of the trusteeship whether the trust duties be deemed separate and distinct or be deemed attached to the executorship.

*In re Sadler's Estate,* 303 Pa. 279, 154 Atl. 589, was one in which the testator, having established a trust by will, provided further that "my executors and trus-

tees are to be my wife \* \* \* and my brother \* \* \*.''
The wife, by letter directed to the register of wills,
stated: ''I do hereby renounce my right to letters testa-
mentary \* \* \* and request you to grant the same
to Charles A. Sadler as sole executor and trustee.''
Letters testamentary were accordingly issued to the
brother only; and, upon the adjudication of his ac-
count, he was directed to retain the balance as sole
trustee. The widow excepted, claiming that she was
entitled to serve with the brother as co-trustee. The
widow contended that her renunciation in the letter to
the register of wills was not a renunciation of the trus-
teeship. She contended further that if the letter was
a renunciation she had a right to withdraw it prior to
the distribution of the assets. The court said:

> ''Whether or not these contentions would be
> correct in ordinary cases, they certainly are not so
> where, as here, the matter can be determined from
> the will itself \* \* \*.
> ''As already shown, the present testator's will
> points to two desires as regards his trust estate:
> (1) That the same persons should continuously ad-
> minister the trust from the time of his death until
> final distribution; and (2) that they should be his
> widow and his brother. Doubtless he knew, as every
> business man knows, that a change of administra-
> tion often results in a change of policy, with conse-
> quent loss to the estate, especially where, as here,
> there is expressly given the 'full power of sale, mort-
> gaging, converting [and] purchase in everything,'
> as above quoted. By declining to act as executor,
> the widow prevented the carrying out of one of the
> above desires of testator. If she were permitted to
> act as trustee, she would defeat the other also.''

*In Re McKallip's Estate,* 291 Pa. 304, 139 Atl. 839,
was a case in which the testatrix designated certain
persons to serve as trustees and also in another portion

of the will nominated the same persons as executors. "Said executors and trustees, acting in either capacity," were empowered to do certain acts. The testatrix later, by codicil, changed the executors. One of the persons who was named executor and trustee in the will but not named an executor in the codicil claimed that the implied revocation of her appointment as executor in no way affected her right to serve as trustee. The court conceded that the duties of executor and trustee might be severable but looked to the language of the will to determine the purpose and intention of the testatrix. The court held that the testatrix "had no thought of creating distinct offices," and that "there is a manifest intent of testatrix here to annex the trust duty to that of executor, and to provide that those selected should not only administer the estate, but make disposition of it in accordance with her testamentary directions."

The case at bar involves a double question: (1) Were both functions to be performed by a single named person; and (2) who was the named person?

■■ The propositions of law as asserted by both the appellant and respondent, and to which we have referred, are brought into harmony in the Restatement of the Law of Trusts where it is said: "Unless a different intention of the settlor is properly manifested, if the same person is appointed both executor and trustee under a will, * * * he may disclaim as executor and accept as trustee." Restatement of the Law, Trusts, Vol. 1, § 102 (f), p. 275. The question in the case at bar is whether a different intention of the settlor is properly manifested. A brief consideration of the nature of testamentary trusts may be of aid in determining the testator's intention. In behalf of the

appellant Nickelsen it is truly said that the powers and duties relating to the office of executor and that of trustee are distinct and different.

   *"Duties.* The duties of an executor are limited to the winding up of the estate of a decedent and are temporary in their character. In the absence of a statute otherwise providing, the duties of an executor are: (1) to reduce to possession the personal assets of the testator; (2) to pay the testator's debts; (3) to pay legacies; and (4) to distribute the surplus, if any, among the testator's next of kin.

   "If a testator names the same person as executor and as trustee, he is acting as executor in performing the four duties named above; but in performing additional duties he is acting as trustee." Restatement of the Law, Trusts, Vol. 1, § 6 (b), p. 23.

■ Our own decisions recognize the foregoing distinction and indicate that where the same person is appointed as executor and trustee, the executorial duties must ordinarily be performed first before he can exercise his duties as trustee. *Re Estate of McDermid,* 109 Or. 633, 222 P. 295; and *Roach's Estate,* 50 Or. 179, 92 P. 118.

Under certain circumstances, however, an executor and trustee may be authorized or required to perform the distinct duties concurrently. The respondent expressly states that he does not dispute the proposition that functions of an executor and trustee may be united in the same person and may be performed simultaneously. We again quote from the Restatement: "He may act as trustee with reference to a part of the property although he is still acting as executor with reference to the rest of the property." Restatement of the Law, Trusts, Vol. 1, § 6 (b), p. 23.

   "The normal orderly procedure would seem to be that the executor account and be discharged, and

that thereafter the same party qualify as trustee and begin the trust administration. This would make the break between administration as executor and as trustee distinct. But in many cases the trust property consists of a part only of the estate, or for other reasons it is desirable to set up the trust before the estate accounting. It should be possible for the executor to cease to hold given property as such and to begin his administration of it as trust property, if the intent to bring about this effect is clearly indicated in any way." 3 Bogert, Trusts and Trustees, 1837, § 583. 65 C. J. 639, Trusts, § 507.

■ The intention of the testator must also be considered in the light of the law which vests immediate title to the real property which is included in the trust estate in the trustee upon the death of the testator. Appellant expressly concedes that the title to the real property rested in the trustee but contends there was no requirement there should be a determination by a court as to who that trustee was "or whether title was in one particular person or in another." We think the title to the real property vested at the testatrix's death in either Nickelsen or Williams according to the dictates of the will properly construed and that it is relevant to determine in whom the property vested at the time of the testatrix's death.

In the light of these considerations we turn to the wording of the will. The most significant portion thereof is the following: "I do hereby nominate and appoint C. D. Nickelsen to act as executor of this last will and testament and as trustee of the trust herein set up. If he be not living or able to serve * * * I do hereby appoint William E. Williams to act as executor and trustee * * *."

■ The words used establish that Nickelsen was appointed both as executor and as trustee. The appoint-

ment of Williams depended solely upon the inability of Nickelsen "to serve." The time for the determination of the ability or inability to serve was fixed as "the time of my death." It would appear that Nickelsen is confronted by a dilemma. If the only duties which required performance at the time of the testatrix's death were the duties of an executor, then the provision concerning Nickelsen "if he be not * * * able to serve" must refer to his inability to serve as executor. Such inability to serve existed in Judge Nickelsen at the time of the testatrix's death. Wherefore, the specified condition having occurred, the will provides, "I do hereby appoint William E. Williams to act as executor and as trustee." If, on the other hand, at the time of the testatrix's death there were certain affirmative duties of the trusteeship to be performed, then Judge Nickelsen should have entered upon their performance at that time, which he did not do. On the contrary, as we shall later show, his conduct over a long period of time was incompatible with the duties of the trusteeship. Whether they were passive or active, it is pertinent to recall that if he became trustee, title to the real property vested in him upon the death of the testatrix. Other portions of the will support our conclusion that the testatrix expressed the intention that one and the same person should act both as executor and trustee, and, if Nickelsen did not serve as both, that Williams should do so. Paragraph IV of the will contains a bequest to the testatrix's niece but provides that if the niece is not living at the time of the testatrix's death then the bequest shall be "turned over to my executor and trustee" for the education of her son. Thus it appears that if the niece should predecease the testatrix, duties in the highest degree, confidential and discretionary, would have

been imposed by the will upon the executor and trustee in providing for the education of the son, and those duties would have commenced immediately upon the death of the testatrix and prior to the completion of the duties of executor.

Another clause of the will imposes the duty upon "my trustee" to pay to the daughter of the testatrix $30.00 per month; but if she should be required to support herself, then $60.00 per month. Again the will provides:

"I do hereby direct my executor and trustee to accumulate any income over and above the moneys specifically herein before set out to be paid and add the same to the principal; also, to retain any investments which I may have at the time of my death so far as the same shall be reasonable and invest the surplus in other securities as directed by the laws of the State of Oregon, * * *"

These provisions also impose duties over and above any required of an executor in the probate of the estate. They are duties involving discretion and may well have required that both functions be performed simultaneously.

We are of the opinion that the will manifests an intent that the duties of executor and of trustee should be performed by one person, and since Nickelsen was disqualified to act as executor, Williams was that one. If such conclusion were subject to any uncertainty, the matters now to be noticed would dispel the doubt.

A trust may be created although no trustee is named in the will, for equity will not permit a trust to fail for want of a trustee; and so a trust may be created without notice to or acceptance by the trustee. (Restatement of the Law, Trusts, § 33 and § 35.) But a

testator cannot impose the office of express trustee upon one who does not expressly or by implication accept it, an acceptance in some manner being necessary to constitute him trustee. 65 C. J. 312 § 76. While acceptance of the trustee is ordinarily presumed, one who has not previously accepted may disclaim. Such a disclaimer may be shown by conduct or by non-action long continued. 65 C. J. 315, Trustee § 77; *Brandon v. Carter,* 119 Mo. 572, 24 S. W. 1035, 41 Am. St. Rep. 673; 1 Bogert, Trusts and Trustees § 150. We think a disclaimer may be manifested by conduct inconsistent with the duties of trustee.

■ Applying these principles to the case at bar, we find persuasive evidence of acceptance by Williams and non-acceptance, if not affirmative rejection, of the trusteeship by Nickelsen. Since trustees were named in the alternative, one of whom in any event was qualified, it is proper to assume that title to the realty passed to Nickelsen or to Williams at the death of the testatrix. *Daley v. Daley,* 300 Mass. 17, 14 N. E. (2d) 113. As said in 1 Bogert, Trusts and Trustees 452, § 150: "Where the same person is named executor and trustee by the same will, acceptance and qualification as executor may well show an implied acceptance of the trust as well; the duties of the two offices being closely related." *Baldwin v. Porter,* 12 Conn. 473; *Hanson v. Worthington,* 12 Md. 418.

■ Nickelsen's conduct, on the other hand, appears inconsistent with any theory that the title to the real estate had vested in him or that he had any duties or responsibilities as trustee. As County Judge he declared Williams to be the sole person who was qualified to act as executor and appointed him to that office. He required Williams to give bond to be approved by him-

234

self as County Judge. He appointed appraisers of the estate. At different times he approved many claims against the estate and ordered them paid. He authorized Williams to retain a manager for an apartment building which was a part of the trust estate. By the will, Gertrude Benson was to have the use of farm property which was a part of the trust estate, under certain conditions; and the will further provided "my trustee shall pay the sum of Thirty Dollars ($30.00) per month unto my daughter, Gertrude E. Benson," with the further provision for the payment of sixty dollars in the event she should be required to support herself. The will also directed the trustee to give Elizabeth Catterlin the use of an apartment in the building which was part of the trust estate and to pay her fifteen dollars per month during the rest of her life. By an order of January 7, 1942, Judge Nickelsen directed that Williams "shall make no distributions to legatees [or] devisees under the will of Elizabeth M. Buelow until further Order entered by the Court herein." On January 7, 1942, Nickelsen, as County Judge, approved the first semiannual account. On June 4, 1942, the court made orders approving claims, one of which was in favor of Elizabeth Catterlin, one of the beneficiaries of the trust, and directed the payment of six hundred dollars attorney's fees. On June 24th, he made an order fixing the time for hearing objections to final account.

The will indicates that the trust estate consisted of both real and personal property. If Nickelsen was vested with title to the real property as of the date of the testatrix's death and was ultimately entitled to the personal property, subject to the prior rights of the executor, on the settlement of the estate, then he

was during all the period from the death of the testatrix on October 16, 1941, until July 13, 1942, when he transferred the contest to the circuit court for trial, an interested party having duties to the beneficiaries under the trust and having a right to be heard concerning any matters affecting them. Yet from October 27, 1941, until June 24, 1942, he continued to make orders concerning the administration of the estate. We imply no criticism of his conduct in continuing to exercise the functions of county judge, but we deem such conduct inconsistent with the theory that he was trustee under the terms of the will.

The evidence tends further to indicate that during a portion of that period Nickelsen did not consider himself trustee under the will. It will be recalled that the first assertion by Nickelsen of his claim to the trusteeship was made on July 13, 1942. Apparently the estate was then of considerable value and free from litigation. Thereafter Dorothy West brought suit against the executor claiming a partnership had existed between herself and the testatrix. The executor's report shows that the West suit was argued on March 19, 1943, and decided on some later date. The executor seems to have prevailed in that case, but apparently the time for appeal had not expired on May 13, 1943, the true date of the waiver hereinafter mentioned.

On July 22, 1942, and only a few days after Nickelsen had filed his first contest claiming the trusteeship, Gertrude Benson filed her suit against Williams as executor, Williams and Nickelsen as trustees, and others, wherein she sought a decree impressing a trust in her favor upon the farm property of the Buelow estate. Williams filed an answer "as executor and trustee." Nickelsen made no appearance, and an order

of default was entered against him. A report of the executor shows that the case was tried on May 3 and 4, 1943, "whereupon the court rendered its decision, orally ruling that said Gertrude Benson was the owner of said real property and awarding her $4,000 from the assets of said estate to build said house."

The printed abstract of record erroneously shows that Nickelsen filed his waiver on July 13, 1942, in the following form:

"WAIVER

Come C. D. Nickelsen and waives any objection to the closing of the above entitled estate that may be raised by reason of a certain instrument filed in this Court and cause on the 13th day of July, 1942."

Thus it would appear from the abstract that the waiver was filed on the same day on which he filed his first claim to the trusteeship. It is argued that by the waiver Nickelsen intended merely to permit the closing of the estate but was still insisting on his right to distribution as trustee. If the waiver had in fact been filed on the same day as the objections, there might be some weight to this contention; but the original papers show that the waiver was not filed on July 13, 1942. On the contrary it was filed on May 13, 1943. Thus when Nickelsen filed his waiver, the estate appeared to be in a seriously depleted condition. The West case had been tried and attorney fees incurred of the "agreed and reasonable value of $3,500.00." Gertrude Benson had obtained a decree in the circuit court awarding her all the farm property of the estate, and in that and other cases extraordinary services had been performed by the executor and his attorney involving large expenses and attorney fees, all as indi-

cated in the reports of the executor. It was ten months after filing his claim to the trusteeship, and under these conditions, that Nickelsen filed his waiver.

In the Benson case Williams took an appeal to the supreme court; and, on June 6, 1944, the decree favoring the plaintiff Benson was reversed and title to the farm property was confirmed as part of the trust estate. The executor filed his Final Supplemental Account to Final Account on August 29, 1944, showing assets of personal property on hand in the sum of $29,891.48, plus real property valued at $6,250.00.

It was not until November 10, 1944, that Nickelsen renewed his objections and again claimed the trusteeship.

■ The final step in closing the estate under normal procedure would have been to order the distribution of the residuum to the proper person as trustee. The only objection or assertion made by Nickelsen in the "certain instrument" filed on July 13, 1942, was based on his claim to the trusteeship. When ten months later he waived the objection to the closing of the estate, which objection was raised by means of that certain instrument, we think he waived the trusteeship. He cannot be permitted first to assert his alleged rights; second, to waive them when the estate appears to be depleted; and then to re-assert them after the tide of litigation has turned in its favor.

Our conclusion is that it was the intent of the testatrix as expressed in the will that the same person should serve as executor and trustee and that, in view of the disqualification of Judge Nickelsen to serve as executor, Williams was that person. We find that Williams qualified as executor, accepted the duties

of trustee, and as trustee appeared and defended the beneficiaries in important litigation, and that Nickelsen both by action and non-action renounced the trusteeship and cannot now re-assert his claim. It follows that it is unnecessary to consider the other contentions of the respondent to which reference has been made. The decree of the circuit court is affirmed with costs.