Argued April 26, affirmed in part; reversed in part and remanded
July 19, 1976

In the Matter of the Guardianship of Joseph Lionel
Smith and Cinthia Ann Smith, minor children

*v.*

LOVEJOY, *Respondent.*

(No. 5076, CA 5016)

In the Matter of the Guardianship of Joseph Lionel
Smith and Cinthia Ann Smith, minor children.

CANTERA, *Appellant,*

*v.*

LOVEJOY, *Respondent.*

(No. 5077, CA 5015)

552 P2d 606

*James B. O'Hanlon* and *Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant. With them on the briefs were Robert G. Simpson and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*George A. Rhoten* and *Keith J. Bauer,* Salem, argued the cause for respondent. With them on the brief were Herbert R. DeSelms and Rhoten, Rhoten & Speerstra, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

 

## FOLEY, J.

This is a consolidated appeal from a circuit court order denying a petition for removal of respondent Stephen A. Lovejoy as conservator and guardian for two minor children, Joseph Lionel Smith and Cinthia Ann Smith, and approving his accounting as personal representative of the estate of the children's mother and as guardian of the children's estate.[1] Respondent's status as conservator and guardian and as personal representative was challenged by Sister Mary Cantera, a Catholic nun and sole devisee under the will of the children's mother, Lucy Ann Smith, as trustee of the estate for the benefit of the children. Sister Cantera alleged that respondent conducted himself improperly in many respects as personal representative of the estate and as conservator and guardian for the children and requested that he be required to account for alleged deficiencies in the estate. She also sought to replace respondent as conservator of the children's estate and as guardian of the children. On appeal Sister Cantera reasserts these contentions. We reverse that portion of the trial court order continuing respondent as conservator of the children's estate and remand for the appointment of a corporate conservator.

---

[1] Upon petition by Lionel L. Smith, the adoptive father of the Smith children, respondent was appointed guardian of the persons and estates of the children on December 12, 1973. By operation of law, his status was converted to that of guardian and conservator as of January 1, 1974, under Oregon Laws 1975, ch 245, § 1, pp 327-28. In pertinent part, that section provides:

"(1) The procedure prescribed by this Act applies to any proceedings commenced thereon or thereafter, and also as to any further procedure in proceedings then pending except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure prescribed by this Act.

"(2) With respect to any act occurring or done thereon or thereafter:

"* * * * *

"(c) A person appointed guardian of the person and the estate before January 1, 1974, shall have the powers conferred and be subject to the duties imposed upon guardians and conservators by ORS 126.003 to 126.413."

[ 3 ]

The factual background to this controversy is as follows: In late November 1973, Lucy Smith, aged 59, was hospitalized after being stricken by a serious illness. Because of the severity of her illness, Mrs. Smith prevailed upon Sister Cantera to secure for her the services of a lawyer. Sister Cantera selected respondent, a young attorney with whom she was casually acquainted, to assist Mrs. Smith in the preparation of a will. Respondent discussed the matter of a will with Mrs. Smith and after ascertaining her wishes, drafted a will by her bedside. The will was properly executed and attested to at that time. Several days later Mrs. Smith died. The will nominated Sister Cantera as sole trustee of all Mrs. Smith's property for the benefit of her two adopted children and nominated Sister Cantera as guardian of the estate and persons of the children. Respondent was nominated and subsequently appointed personal representative of the Smith estate.

During Mrs. Smith's illness and following her demise, Sister Cantera attempted to secure a home for the Smith children. After the children were briefly cared for by two different families, they were returned to Sister Cantera's convent. Sister Cantera then asked respondent and his wife to raise the children. They agreed to do so and took the children from the convent on December 9, 1973. There is a sharp conflict in the testimony with respect to the subsequent course of events and the mutual understanding of the parties.

On December 12, 1973, Sister Cantera signed a letter to the circuit judge prepared by respondent which renounced her nomination as guardian and requested the appointment of respondent as guardian of the Smith children. At trial, Sister Cantera testified that she did not understand the legal significance of the letter when she signed it and respondent did not explain the document to her. She claimed that she signed the letter under the mistaken belief that it was necessary to do so in order to permit respondent to take custody of the children and settle the Smith estate but

[ 4 ]

did not intend to relinquish her nomination as guardian. To the contrary, respondent testified that Sister Cantera participated in the formulation of a plan whereby the children's grandmother, who was present for Lucy Smith's funeral at the time, would submit an affidavit recommending respondent as guardian and that the substance of the document was explained to Sister Cantera two days before the Sister signed the renunciation letter. He also testified that Sister Cantera's renunciation was in accordance with her expressed intention not to serve as guardian or trustee under the will because she was unable to discharge those responsibilities.

Our review is de novo. In *Hannan v. Good Samaritan Hosp,* 4 Or App 178, 187, 471 P2d 831, 476 P2d 931, Sup Ct *review denied* (1971), we held:

"* * * [A] de novo review is a trial anew in the fullest sense, with the findings of the trial court, subject to one exception, being given no weight. This exception has been enunciated in terms of giving 'great weight' to the tribunal (usually the trial judge) who had the opportunity to see and hear the witnesses and thus be better able to weigh their credibility on disputed issues of fact. * * *"

In *Stevens v. Hay,* 268 Or 20, 22, 519 P2d 1040 (1974), our Supreme Court said:

"* * * [W]e have repeatedly held that in trying an appeal de novo we give 'great weight' to the trial court's findings; or we consider such findings 'persuasive' or 'entitled to consideration.' *Friesen v. Fuiten,* 257 Or 221, 227, 478 P2d 372 (1970); *Mohr v. Lear,* 239 Or 41, 48, 395 P2d 117 (1964)."

Although the trial judge made no findings of fact, implicit in his order is a determination that Sister Cantera knowingly renounced her nomination as guardian of the Smith children. The record indicates that the determination by the trial judge was necessarily based on his assessment of the credibility of the witnesses on this issue. We therefore give great weight to his factual determination. *Stevens v. Hay, supra.*

[ 5 ]

Our review of the relevant testimony does not persuade us to a contrary finding. *See Norman v. Jerich Corporation,* 263 Or 259, 501 P2d 305 (1972). Moreover, Sister Cantera's conduct after signing the letter suggests that she no longer considered the guardianship of the Smith children her responsibility. By her own testimony she did not contact Lovejoy regarding the care and maintenance of the children during a substantial portion of 1974. Thus, we conclude that Sister Cantera knowingly renounced her nomination as guardian of the Smith children.

However, we do not agree with respondent's contention that Sister Cantera also renounced her appointment as trustee of the Smith estate for the benefit of the children. The trial court made no finding as to who was to be trustee. The letter signed by Sister Cantera refers only to her nomination as guardian of the children and does not recommend respondent as trustee of the Smith estate. Respondent testified that Sister Cantera intended to waive all of her rights under the will and that his failure to refer to the trusteeship in the letter was merely an oversight.

Respondent misplaces reliance on *In re Buelow's Estate,* 177 Or 218, 161 P2d 909 (1945), for the proposition that Sister Cantera's renunciation of her nomination as guardian under the will impliedly renounced her rights and duties as trustee as well. *Buelow* involved a situation where the testamentary intent of the testatrix was to combine the functions of executor and trustee in a single individual. The individual named simultaneously as executor and trustee of the decedent's estate was held to be ineligible as trustee subsequent to his disqualification as executor in view of this testamentary intent that the duties of the two offices not be separated and performed by different persons. Assuming, arguendo, that the holding in *Buelow* is applicable to a situation involving the nomination of a guardian and a trustee, we follow the rule of law established by that case:

"We think that the effect of an ineligibility to, or a

renunciation of, an executorship upon the right to act as trustee depends in each case upon the nature of the trust duties created by the will and upon the intent of the testator concerning the exercise of those duties as manifested by the will. If the will manifests the intention that the duties of executor and trustee shall be kept separate and may be performed by different persons, then a renunciation of the one does not necessarily amount to a renunciation of the other." 177 Or at 224.

■ Unlike the situation in *Buelow,* here the two offices were established in separate articles and paragraphs of the will. These separate will provisions indicate that Lucy Smith intended that the duties of trustee and guardian could be performed by different individuals. In addition, Sister Cantera was given particular powers and authorizations as trustee under the will. Since Sister Cantera's renunciation of the guardianship did not operate to relieve her of her trusteeship, respondent is required by law to disburse the funds remaining in the estate to Sister Cantera to be held in trust by her for the benefit of the Smith children.

■■ We now turn to Sister Cantera's contention that respondent has failed to reasonably account for his administration of the Smith estate as personal representative and as guardian of the children's estate. The burden of proving the accuracy of an accounting must be carried by the personal representative when objections are made to the propriety of disbursements or to the sale of estate property. *Security Inv. Co. v. Miller,* 189 Or 246, 218 P2d 966 (1950). *Storms v. Schilling,* 25 Or App 209, 548 P2d 529 (1976). Here, the final accounting filed by respondent listed all the assets of the Smith estate and itemized the expenditures from estate funds, resulting in a net estate of $36,301.18. The accounting worksheets submitted by respondent provide an adequate accounting of the financial administration of the estate.

■˙ Although respondent has sufficiently accounted for estate funds, his conduct as personal representative nevertheless fell considerably short of the standard

required of an individual assuming that office. The standard of conduct required of a personal representative was described by our Supreme Court in *Stewart v. Baxter,* 145 Or 460, 479, 28 P2d 642, 91 ALR 818 (1934), as follows:

> "An executor or administrator occupies a position of the highest trust and confidence and is required to use reasonable diligence and act in entire good faith in performing the duties of his trust. The prudence, care and judgment of fiduciaries, ordinarily capable under like circumstances, furnish the standard by which his conduct is to be judged. * * *"

*See also Jimenez v. Lee,* 274 Or 457, 547 P2d 126 (1976); *Anderson v. Palmer,* 111 Or 137, 224 P 629 (1924).

Respondent admittedly failed to comply with many of the pertinent notice provisions requiring that he give formal notice to devisees and other affected persons in his capacity as personal representative. Although he knew that Sister Cantera was the sole devisee of Lucy Smith's will as trustee for the children, he failed to provide her with written notice of the commencement of the probate proceedings and file proof of notice as required by ORS 113.145. Nor did respondent provide the Sister with written notice of the final accounting or file proof of notice. ORS 116.093. Moreover, he did not give notice to Sister Cantera of his petition for a support order in violation of ORS 114.015(3). As a result of these statutory violations, Sister Cantera was effectively precluded from earlier voicing any objections she may have had to respondent's administration of the Smith estate.

It is also apparent that respondent improperly purchased a minibus partially financed by estate funds as an alleged investment for the Smith children and for their transportation. Although respondent accounted for the $1,650 invested in the minibus in the guardian's annual accounting, it was improper for him to commingle estate funds with his own personal

[ 8 ]

assets. *See In re Israel's Estate,* 64 Misc2d 1035, 315 NYS2d 453 (Sur Ct, Nassau Co 1970); *see also* Restatement (Second) of Agency 228, § 398 (1958). A number of witnesses testified that the minibus was used extensively by respondent's wife in her floral business. Moreover, the reasonableness of this "investment" of estate funds by a fiduciary is doubtful at best.[2] *See Roach's Estate,* 50 Or 179, 92 P 118 (1907).

■ Finally, respondent's filing of the annual accounting required by ORS 126.283(1) in his capacity as conservator of the estate of the children did not include monthly payments of $274 received by him from the Social Security Administration as surviving-minor benefits under Lucy Smith's fund. These payments were the property of the children and should not have been considered in computing his compensation as guardian unless included in an accounting and approved by court order. *See* ORS 126.080.

In sum, our review of the record in this case compels the conclusion that the fault of respondent's conduct

"* * * lies in a complete failure to grasp the high sense of loyalty required of an executor. '* * * (E)xecutors or administrator[s] will not be permitted under any circumstances, to derive a personal benefit from the manner in which they transact the business or manage the assets of the estate.' [Citation omitted.] Executors must at all times exercise the utmost good faith and may never advance their own personal interests at the expense of beneficiaries (31 Am. Jur.2d Exec. and Admin., § 216; *see also,* Restatement, Trusts, Duty of Loyalty § 170)." *In re Israel's Estate, supra* at 459-60.

In view of respondent's unsatisfactory performance

[2]The standard of care imposed on a fiduciary when investing the property of another person is the statutorily enacted "prudent man" rule:

"In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. * * *" ORS 128.020.

[ 9 ]

as personal representative of the Smith estate and because the Smith children will presumably inherit a large estate of their own,[3] we remand for the trial court to appoint a corporate conservator of the children's estate.[4] The appointment of a conservator of the estate of minor children as distinct from the appointment of a guardian of such children is authorized by the legislative scheme governing conservatorships and guardianships. ORS ch 126. ORS 126.307 provides that the parental rights conferred on a conservator "* * * do not preclude appointment of a guardian as provided under ORS 126.060 to 126.095." *See also* ORS 126.080, 126.313. We conclude that in this case the offices of conservator and guardian should be separately established.

■ We next turn to Sister Cantera's challenge to respondent's guardianship of the Smith children. Although respondent has not demonstrated the judgment necessary to perform the duties required of him as conservator, we nevertheless are of the opinion that the best interests of the children will be served by retaining him as their guardian. *See* ORS 126.070(2). The children, now aged seven and five, had been in respondent's custody for approximately a year and one-half at the time of trial. A number of witnesses testified that the children were well cared for and that their well-being has substantially improved since respondent took custody of the children. The testimony of these witnesses, including that of the children's

[3]The record shows that Lucy Smith's mother, now deceased, was possessed of a substantial estate in cash assets and real property at the time of her death and that the Smith children will inherit a large portion of the estate. The estate is valued in excess of $1 million.

[4]We decline to appoint Sister Cantera conservator because, as a practical matter, we do not anticipate that a satisfactory working relationship could be arranged between her and respondent in his capacity as guardian of the children. Sister Cantera's primary objection to respondent's continuing as guardian of the Smith children appears to be her belief that respondent is not rearing the children in strict accordance with the basic tenets of the Catholic faith. Because of her strong religious convictions, it is likely that conflict between the parties would continue under such an arrangement to the detriment of the children.

physician, establishes that the children have adjusted well to respondent and are now developing normally as contrasted to a period of severe emotional instability at the time respondent assumed custody. The trial judge apparently believed this testimony and we also find it convincing. *See Norman v. Jerich Corporation, supra.* Under these circumstances, we decline to remove respondent as guardian of the children.

Affirmed in part, reversed in part and remanded.