Argued April 7, reversed September 28, petition for
rehearing denied October 25, 1972

NORMAN, *Appellant, v.* JERICH
CORPORATION ET AL, *Respondents.*
501 P2d 305

*Robert P. Dickinson,* Gresham, argued the cause and filed briefs for appellant.

*Ron D. Bailey,* Portland, argued the cause for respondents.

O'CONNELL, C. J.

This is a suit to compel defendants to transfer Jerich Corporation common stock from Jerold David Norman to plaintiff and to reflect the transfer on the books of Jerich Corporation. Plaintiff appeals from a decree dismissing her complaint.

The trial court denied plaintiff's requested relief on the ground that the transfer violated one of the

(Holman, J., did not participate in this decision.)

bylaws of the defendant corporation and thus made operative ORS 78.2040, which provides:

"Unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with actual knowledge of it."

The bylaw in question reads as follows:

"No stockholder shall have the right to sell, transfer, assign or pledge his shares, or any part thereof, unless he has first given thirty (30) days' notice in writing of his intention so to do to the corporation and to each stockholder of record, together with a first option to the corporation and a second option to each other stockholder to purchase said shares at their fair value. Such notice may be given either personally or by mail. * * * If the corporation, in such event, does not exercise its first option to purchase said shares at their fair value, then the remaining stockholders of the corporation shall have the right among themselves to purchase such proportion of the total number of shares offered in the ratio which the number of shares held by each bears to the total number of shares owned by stockholders desiring to participate in such purchase. * * * A reference to this provision shall be printed or endorsed upon each and every certificate of stock issued by the corporation."

■ The issue presented to us on appeal is whether plaintiff transferee had actual knowledge of the restriction contained in the bylaw. Since this is a suit in equity, we examine the record de novo. We hold that there was not sufficient evidence of plaintiff's knowledge of the restriction to make the restriction effective against her.

The facts are as follows. In the spring of 1959, defendant Norman and others formed the Jerich

Corporation, whose principal asset is an apartment building in Portland. In December, 1959, Norman reissued the stock exclusively to his family, retaining 27% of the stock for himself, and issuing 25% to plaintiff, his wife, and 24% to each of their two children, David and Becky, who were 15 and 12 at the time. No other stock has been authorized or issued by the corporation.

The business of the corporation was handled by Norman, who served as a director and as its president throughout its existence. Mrs. Norman was made vice-president and treasurer. She did not take an active part in the operation of the business except to sign papers at the request of her husband. The corporation has held shareholder meetings only infrequently. It has paid no dividends.

In 1964 the Normans were divorced. By the terms of the divorce decree both parties kept the Jerich shares they owned. After the divorce, both plaintiff and defendant Norman made efforts to gain control of the corporation.

The present controversy stems from a transfer of Jerich Corporation stock from the son, David, to Mrs. Norman. In December, 1965, and in January, 1966, David executed two separate assignments of his stock and delivered the stock to his mother. However, in 1967, David gave his father a proxy to vote the same shares. Later in the same year, David disappeared and extensive efforts to determine his whereabouts have failed.

After David's disappearance, Mrs. Norman began attempts to have the corporate records show that she owned the shares which had been issued to David. She stated that she did not seek to have the transfer

recorded earlier since she did not know that it was necessary.

None of the stock certificates of Jerich Corporation contained any restrictions on transferability. The only question is, therefore, whether plaintiff had actual knowledge of the bylaw restrictions at the time of the assignment of the stock to her.

Defendant Norman contends that plaintiff and David had actual knowledge of the restrictions. He testified that when he distributed the Jerich shares to the family, he held a family meeting in the kitchen of the family home, at which time he called the family's attention to the restrictive bylaw provision. In this connection, he testified as follows:

"* * * Now I amplified at that time the matter of we did not want in the future any foreign intruders in this ownership, this family ownership, that this was just for the family's benefit and that is one reason we had put the restriction as far as sale on any of the stock. I had even said that it wasn't, there was a statement in it so that if one wanted to sell, one of the family wanted to sell that they could sell to the corporation or to another stockholder. But that was for their benefit. * * *

"Now I looked at each one to ask them specific if they understood what I was saying and what I was trying to do and I got an affirmative answer in each one."

Plaintiff testified that she had no recollection of the alleged family meeting at which the defendant maintains he explained the bylaws.

▮ Defendants, having affirmatively alleged that plaintiff had actual knowledge of the restriction on transfer, have the burden of proving that allegation.[①]

---

[①] ORS 41.240.

We are of the opinion that defendants have not carried that burden.

First, as the trial court observed, plaintiff was a "typical housewife" who knew nothing about corporations. She did not participate in the day-to-day operation of the corporation. She was not familiar with corporate procedures. Although she was an officer of the corporation, she did nothing in the performance of her duties as an officer which would have drawn her attention to the bylaw restriction.

Secondly, Mr. Norman's testimony was vague in certain important respects. He recalled in graphic detail how he told the family about the restrictive bylaw when he distributed the shares, even to the point of remembering that the family meeting was held at the "glass kitchen table with metal legs." However, he did not recall with equal facility the details of the accompanying family discussion.

Moreover, his explanation of how he received David's proxy is not convincing. He maintained that after David gave him the proxy to the same shares that he had assigned to plaintiff, David told him that his mother had had him sign some papers relating to the corporation but that he did not know what they were. It seems unlikely that David, a college student over twenty-one years of age at the time, would not have known that he was transferring stock held by him, having in mind that he had executed two separate assignments in a period of three weeks for which he apparently received consideration.

Thirdly, it will be observed from Mr. Norman's own explanation of the bylaws that he felt that the shareholders were free to transfer the shares *within the family* but not outside it. As we noted above, he

testified that he explained to the family that "we did not want in the future any foreign intruders in this ownership, this family ownership, that this was just for the family's benefit and that is one reason we had put the restriction as far as sale on any of the stock."

Even if we assume that Norman discussed the bylaw restriction with plaintiff, the explanation which was made by him would not have warned plaintiff that an interfamily transfer would be prohibited. Moreover, Mr. Norman's own conduct demonstrates that he felt that the shares could be sold freely within the family. On three occasions he sought to buy Jerich Corporation shares from other members of his family. In none of these instances did he offer the corporation or other family members the opportunity to buy the shares.

■ Taking the evidence as a whole, we are of the opinion that defendants did not carry their burden of proving plaintiff's knowledge of the bylaw restriction.

■ Ordinarily, when an equity case turns upon the credibility of the witnesses, we give great weight to the trial judge's appraisal of the testimony. However, when from the record itself it appears to us that the testimony is not convincing, we make our own individual appraisal. We do not think that the testimony of the defendant Norman in support of his contention that plaintiff was aware of the restriction had the ring of truth, and therefore we cannot accept it.

The decree of the trial court is reversed.

McAllister, J., concurs in the result.