Argued January 7, affirmed April 25, 1974

MARASTONI ET UX, *Appellants, v.* LUCEY ET AL,
*Respondents.*

LUCEY ET AL, *Respondents, v.* MARASTONI ET UX,
*Appellants.*
521 P2d 521

*Fredrick Siegrist,* Springfield, argued the cause for appellants. With him on the brief were Sanders, Lively & Wiswall, Springfield.

*Jack A. Gardner,* Eugene, argued the cause and filed a brief for respondents.

BRYSON, J.

Consolidated in this opinion are two appeals by Attilio and Julia Marastoni from a separate decree and judgment.

*Marastoni v. Lucey and Krumm* is a suit for specific performance of an oral agreement to extend the term of lease on an existing written lease to April, 1975. The trial court found for defendants Lucey and Krumm and dismissed the complaint.

*Lucey and Krumm v. Marastoni* is a forcible entry and detainer action, filed shortly after the decree in the above suit, to gain possession of the premises leased by the Marastonis. By agreement of counsel, the court took judicial knowledge of the testimony, exhibits, and proceedings in the above suit for specific performance. The trial court entered judgment in favor of Lucey and Krumm for restitution of the described premises. The Marastonis appeal from the decree and judgment entered against them.

The suit for specific performance is the control-

ling case. At the conclusion of that suit, the trial court found:

> "* * * [I]n the Court's opinion, [this] is nothing more than the fact that they were talking about a possible extension, and there was a very good possibility that there would be an extension. But this is not the type of evidence that the Court, the Oregon Court requires when we're talking about an enforceable oral contract, because the very nature of an oral contract is that there is nothing there to look at and it may be — there may be lots of differences between the parties. I do not feel that there was any meeting of the minds. I do not feel that the plaintiffs have shown this matter by a preponderance of the evidence. In the Court's opinion, there was no oral contract * * *."

Plaintiffs contend that:

> "The circuit court's ruling, and therefore its Decree, was in error in finding plaintiffs' evidence failed to establish an enforceable oral contract."

Plaintiffs' brief states:

> "* * * [T]he determinative issue to be decided by this appeal is whether the circuit court was correct in its holding that no enforceable oral agreement existed between the parties."

We review the case de novo. However, where the decision "turns upon the credibility of the witnesses, we give great weight to the trial judge's appraisal of the testimony." *Norman v. Jerich Corporation,* 263 Or 259, 265, 501 P2d 305 (1972).

On December 17, 1969, defendants leased to plaintiffs "[t]he first floor of the Log Cabin Inn" situated on real property located at McKenzie Bridge, Lane County, Oregon, for a period ending March 31, 1973, for the operation of a restaurant. The plaintiff-tenants had "the first right of refusal to renew this

lease for a period of five (5) years after the expiration of the original term * * * in the event Landlord determines that it desires to relet the premises." If the defendant-landlord decided to relet, the rental to be paid for any additional term was to be negotiated. The lease further provided that after the first year the rental was $150 per month, or seven percent of plaintiff-lessees' gross receipts, whichever was greater.

The restaurant was successful and attracted overflow crowds. The Marastonis decided that the restaurant building should be extended to accommodate more customers, and they met with Krumm and Lucey on April 1, 1970, at the restaurant to discuss the proposed construction. The testimony concerning the conversation which took place contains several sharp conflicts.

According to the Marastonis, the subject of an addition to the restaurant had been discussed with defendants only in general terms during February and March of 1970 and they requested a meeting on April 1, 1970, to obtain the final agreement of defendant-lessors. Lucey and Krumm had received bids on the proposed construction and they had "tentatively" agreed to pay for the construction if the Marastonis paid for the interior furnishings.

At the meeting on April 1, Lucey expressed his desire to have some assurance that the Marastonis would continue to operate the restaurant beyond the existing lease term. According to the Marastonis, Lucey requested that they agree to a five-year extension of the lease, and the Marastonis accepted the proposal immediately. Mrs. Marastoni testified:

"* * * Art [Lucey] was very insistent that day

that he wanted another five-year lease before he would go ahead and do anything, which consequently meant that we would have another five years to get our investment out as well. I mean, he was protecting himself, and by the extension on the lease we would have plenty of time to get our money back."

The Marastonis left the meeting under the impression that the landlords would instruct their attorney, Ralph Cobb, to draft the new lease agreement, which would alter the existing lease only with respect to the termination date.

The following additional facts were brought out on the cross-examination of the Marastonis. Although they assumed that an agreement concerning an extension of the lease had been reached at the April meeting, the Marastonis both expected the agreement to be reduced to writing and either submitted for approval or signed by the parties. The Marastonis testified that the new lease arrangement was to be identical to the original with a modification in the term only. However, Mrs. Marastoni conceded that the date of termination of the new lease was left uncertain, and that there had been no discussion at all of other points of dispute, such as rental, taxes, insurance, and restaurant hours of operation. She stated in her deposition, read into the record, that she and her husband and defendants understood that they would have to meet with attorney Ralph Cobb and agree upon the terms of the lease and that they planned to meet with attorney Cobb to work out their problems.

The principals did meet with attorney Cobb on October 1, 1970, and discussed several variances in the terms of the new lease which the defendants had

requested. The Marastonis believed that this meeting resolved all points of disagreement, but they again expected attorney Cobb to prepare a written document embodying the lease terms and conditions. Mrs. Marastoni testified that there was discussion regarding payment of additional taxes and insurance and an increased minimum monthly rental at the October 1, 1970, meeting. No written agreement was ever presented to the Marastonis for their approval. On October 31, 1972, two years after the meeting with Cobb, Mr. Marastoni wrote to defendants and stated:

> "* * * [W]e would like to negotiate the five year extension as mentioned in * * * our current lease * * *."

The defendant-lessors related a substantially different version of the lease negotiations which took place in 1970. Paul Krumm testified that during the first years of the lease there had been serious problems, including physical violence, between the defendant-lessors and Mr. Marastoni. Mr. Marastoni struck defendant Krumm and "physically threw him [defendant Lucey] out the door." Due in part to these problems and confrontations, the lessors were reluctant to accede to the Marastonis' request that they build a substantial addition to the restaurant. At the April 1, 1970, meeting the lessors agreed to build the addition and the Marastonis agreed to furnish it. An extension of the lease term was mentioned but it was not thoroughly discussed, and no agreement was reached.

On instructions from the lessors, attorney Cobb prepared a new "Supplemental Lease" which incorporated the provisions of the original lease but included a five-year extension of the term of lease, to and including the 31st day of March, 1978. The plaintiffs allege and Mr. Marastoni testified that "defendants

agreed to extend the lease term to April, 1975." The defendants did not approve the suggested "Supplemental Lease" and did not sign it or forward it to the Marastonis for signature. According to the testimony, the parties, together with attorney Cobb, met again on October 1, 1970, to discuss the subject of a new lease and the period of extension. However, no agreement was reached. A number of other subjects were negotiated, including increased minimum monthly rental, use of available water, and payment of additional taxes and insurance premiums by plaintiffs, but the parties did not come to any agreement. No written lease incorporating a five-year extension of the term of lease was ever presented to or signed by the Marastonis. The relationship of the parties deteriorated. The plaintiffs moved their place of operation to Bend, Oregon, and put other parties in charge of the Log Cabin Inn, and this litigation ensued.

The evidence shows that defendants had numerous complaints about the operation of the restaurant by the Marastonis from the inception of the lease arrangement. Leaving aside the problem of physical violence toward them, the lessors wanted the Marastonis to pay the additional taxes and insurance caused by the improvements, and a higher minimum rent. Also, there were additional objections to the parking arrangements, hours of operation at the restaurant, and when water was to be available to the lessees. The lessors also complained that the Marastonis were returning inaccurate financial statements and causing trouble at the bank. All parties concede that none of these subjects were even discussed at the April 1, 1970, meeting. It seems unlikely that the lessors would agree to modify the lease piecemeal by extending the lease

term in April, 1970, and leaving these other important subjects to later negotiations that might prove entirely unsuccessful.

In *Bennett v. Pratt,* 228 Or 474, 365 P2d 622 (1961), a suit for specific performance of an oral lease agreement, this court held that such an agreement must be established by clear and convincing proof. The court also referred to the rule that specific performance should not be decreed " 'unless the terms of the contract are so definite and certain that the acts to be performed can be ascertained and that the court can determine whether or not the performance rendered is in accord with the contractual duty assumed. * * *' " *Id.* at 479, 365 P2d at 625, quoting 5A Corbin on Contracts § 1174 at 278.

■ There are three essential elements of a lease: a description of the property, the duration of the term, and the rental consideration. *Bennett v. Pratt, supra; Young v. Neill,* 190 Or 161, 166, 220 P2d 89, 91 (1960); *Bevan v. Templemann,* 145 Or 279, 289, 26 P2d 775 (1933); *Karamanos v. Hamm,* 267 Or 1, 513 P2d 761 (1973). The record in this case discloses no evidence to show that lessors and lessees agreed on the duration of the term of lease or the monthly rental to be paid.

We are unable to state with any degree of certainty the date when the alleged lease modification was to take effect. Discussing the April 1, 1970, meeting, Mr. Marastoni testified:

> "Q And, then, did both of you refer to a specified period of time in which the extension would take place?
>
> "A I thought it was to be from that time thereon for five years."

However, by deposition read into the record, Mr. Marastoni testified as follows concerning the April meeting:

"Q 'Question: What did Mr. Lucey say concerning the details of the extension, if anything?
'Answer: Nothing.

'Question: What did he say concerning the time period in which the extension would apply? How long would the extension be?
'Answer: There was nothing said at this time on the extension ·or anything.

'Question: No detail whatever?
'Answer: No.'

[Cross-examination]:

"[Mr. Gardner]: Were those your answers to those questions?
"A Yes.

"Q And are those still accurate?
"A Yes."

Mrs. Marastoni, under cross-examination, testified as follows concerning the operative dates of the alleged lease modification which she says was established in April, 1970.

"Q Now did you expect a modification or addition or extension onto the existing lease or a brand new one?
"A Well, I just assumed it would be a new five-year lease that he was going to write up.

"Q When did you make this assumption? In April or later when Mr. Cobb was there?
"A Well, I really didn't know when they were going to date it as of when, you know, because he had been so long coming up there to write it up after we had talked about it the first time. So, I didn't know what they had in mind, but, anyway,

there was an extension on a new lease, and it was five years. So, that meant we had longer than March 31, 1973.

"How much longer, I didn't know. We never did receive the lease that they wrote up.

"* * * * *

"Q   It was a pretty loose understanding regarding the time, wasn't it?

"A   They didn't say a time. They said five years. They kept saying they wanted five more years. I don't know if they wanted five more years from '73 or five more years from that time. I never did see the lease that they had written up. It was from the attorney who had written it."

■ Although Mr. Marastoni testified at the trial that the five-year extension was operative from April 1, 1970, the supplemental lease drafted by Ralph Cobb in June of 1970, on which the Marastonis heavily rely as evidence of the existence of an oral lease modification, fixes the commencement date of the new lease term as April 1, 1973. This court is reluctant to order specific performance where the record reflects substantial uncertainty with regard to the performance which must be rendered.

In summary, we find that plaintiffs have failed to prove by clear and convincing evidence the existence of an oral lease modification. We further find that the evidence, which was introduced to show the existence of the oral lease modification, demonstrates that there existed substantial uncertainty between the parties with regard to the operative dates of the alleged modified lease as well as other terms and conditions. For these reasons the decree of the trial court in *Marastoni v. Lucey and Krumm* is affirmed. It follows that the

court did not err in allowing restitution for plaintiffs in *Lucey and Krumm v. Marastoni.*

Affirmed.

O'CONNELL, C. J., dissenting.

I am of the opinion that plaintiffs established, by clear and convincing evidence, a five-year extension of the original lease. It is undisputed that the parties got together in April, 1970 to discuss an addition to the leased premises by defendants. At that meeting it was orally agreed that defendants would construct the addition and that plaintiffs would furnish it. The building contractor who had submitted a bid to defendants for the proposed addition was present at the meeting. His testimony was as follows:

"Q And was there any conversation at that particular time that you overheard in regard to the length of such an extension, if any?

"A I would say that both parties involved, Mr. Lucey and Mr. Krumm and Mr. Marastoni and Mrs. Marastoni — each were in concurrence before they went into any expenditures, that they wanted some kind of an agreement that the lease was to be extended.

"Q And was there any conversation at that particular time that you overheard in regard to the length of such an extension, if any?

"A There was a five-year term under discussion.

"Q And did Mr. Krumm and Mr. Lucey appear to agree with that?

"A Yes, they did.

"Q Did Mr. Marastoni and Mrs. Marastoni appear to agree with that?

"A Yes, they did."

William Jacobson, plaintiff's son-in-law, who was also at this meeting, testified that defendant Lucey was reluctant to agree to make the addition unless there was an extension of the lease. At that time, Mr. Lucey said to Mr. Marastoni: "Well, if we make it [the addition], we have to have some assurances that you will be here * * *. I think you should agree to extend the lease." To this, Mr. Marastoni said, "Fine, how long do you want?" and Mr. Lucey replied, "Well, I think we should have at least five years from now." Mr. Marastoni responded: "Fine, draw it up." There was no discussion of any modification of the original lease.

It seems apparent to me, from this evidence, that the parties had in mind an extension of the original lease without any renegotiation of the other provisions of the lease. This is borne out by the events that occurred after the April meeting. Promptly after the meeting defendants instructed their attorney to prepare a written lease. The lease which defendants' attorney prepared did not materially modify any of the provisions of the lease except the period during which it was to run, a circumstance strongly suggesting that defendants and their attorney were proceeding on the assumption that the terms of the original lease were to be retained except for the duration of the lease.

Other circumstances tend to support plaintiffs' contention that the April meeting crystallized the agreement of the parties. Immediately after the April meeting defendants began the construction of the addition and soon thereafter plaintiffs made interior improvements at a cost of over $16,000. All work was completed by September, 1970. It is difficult to believe that the parties would have thus proceeded if they had

intended thereafter to renegotiate the lease. It is almost inconceivable that plaintiffs would spend over $16,000 on improvements without the assurance of a definite agreement entitling them to continued possession after the expiration of the original lease.

For the foregoing reasons I dissent.