Submitted on record and briefs May 31, affirmed November 9, 1983

In the Matter of the Marriage of

## SMITH,
*Respondent,*

*and*

## SMITH,
*Appellant.*

(81-1281-NJ-2; CA A26447)

671 P2d 768

Arlen Porter Smith, Salem, filed the brief pro se for appellant.

James T. Mulhall, Ashland, waived appearance for respondent.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Husband appeals from a dissolution decree and raises four assignments of error. We affirm.[1]

In April, 1981, husband was served with a petition for divorce while incarcerated in the Marion County Jail. A few days later he was transported to the Jackson County Jail in Medford to face criminal charges. Later, he was transferred to the Oregon State Penitentiary. On May 27, 1981, while in the Jackson County Jail, husband filed a responsive pleading to wife's petition for divorce. At that time, he learned that a default judgment had been entered against him the same day. Apparently, neither he nor wife was aware of that development.

On January 25, 1982, husband, then back in the penitentiary, moved for relief from the default judgment and for a change of judge. Both motions were granted. Husband also asked the court to order the clerk to send him written notice of any court action affecting his divorce. The court did not accommodate that request but did notify him that it had reset the divorce hearing for October 28, 1982, nine months later. Husband claims that he made several unsuccessful attempts to reach an out-of-court settlement with his wife during the period between the granting of his motion and the October hearing.

Ten days before the October hearing, husband moved for a continuance for the reasons that 1) due to his incarceration he was unable to attend the trial without court ordered transportation, 2) he was under subpoena to testify in an unrelated criminal trial "during the same approximate time" and 3) a delay would not prejudice wife. Husband "attempted to check on the status" of his motion "several times." On the day before the hearing, he made a telephone call to the court and learned from a clerk that his continuance had been denied and that the court would not issue an order to have him transported to the hearing. Husband asked the clerk to inform the court of his desire to be present and to present testimony at the divorce hearing. Wife appeared in person and with her attorney at the hearing. Husband was not present and was not

---

[1] Wife did not file a brief. The facts we state are drawn either from various documents in the record or from husband's brief.

represented. Wife presented her proposed decree, and the court signed it.

■ Husband's first assignment of error is the trial court's denial of his request to be notified of all actions taken by the court. Husband cites Article I, section 10, of the Oregon Constitution and the due process guarantee of the federal Constitution to support his contention that the trial court's denial deprived him of "meaningful access to the courts." However, he does not identify, and we are not aware of, any statute, local court rule or policy that requires a court to notify a party of every action taken by the court that can affect his interests. Like any other litigant, husband has responsibility for keeping abreast of his own affairs. Although incarcerated, he is not being held incommunicado. He could have contacted the clerk's office by mail or, as the record indicates, by telephone to learn the status of his legal affairs. In fact, husband sought and received relief from the default judgment and was fully informed of the date set for the October hearing.

■ Husband next assigns as error the trial court's denial of his second motion for a continuance. A motion for a continuance is within the discretion of the trial court, and we will not overturn a trial court's action unless there has been a clear abuse of discretion. *Sims v. Sowle,* 238 Or 329, 395 P2d 133 (1964). On the facts in this case, the denial of a continuance was not error.

■ Husband's third assignment is the trial court's "fail[ure] to obtain adequate information for rendering its judgment and decree." In support, husband cites several cases[2] that stand for the proposition that, when credibility and veracity are at issue, oral testimony is preferred over written submissions, but they do not support husband's position. Furthermore, under the adversary system, it is up to the litigants to develop a record. It is not incumbent on the court, *sua sponte,* to gather information on which to base its decision. In this case, husband simply failed to provide information to the court that he believes was important for proper resolution of the case.

---

[2] *Goldberg v. Kelly,* 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970); *Settle and Settle,* 276 Or 759, 772, 556 P2d 962 (1976); *Norman v. Jerich Corporation,* 263 Or 259, 501 P2d 305 (1972); *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 187, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971).

Husband's final assignment is the trial court's refusal to order him transported to the hearing from his place of incarceration. He states that "the real issue in this case is whether a prisoner has the right to appear in a civil proceeding in which he is a party." This assignment, like his first, relating to notification by the court, is based on the idea that a prisoner's limited ability to communicate with the court and his inability, as a matter of right, to attend a civil proceeding in which he is a party violates his state constitutional right to a remedy by due course of law and denies him due process under the federal Constitution.

We are sensitive to the difficulties of court access for prisoners involved in civil litigation. However, husband leaps prematurely to a constitutional claim before examining non-constitutional aspects of the applicable law and demonstrating their inadequacy as applied to him. A proper analysis would begin with an examination of statutes, rules and regulations, "* * * because the State does not violate [a litigant's] constitutional rights if, under * * * the controlling statutes, those rights are in fact protected." *State v. Spada,* 286 Or 305, 309, 594 P2d 815 (1979).

The Corrections Division has promulgated rules in respect to the legal affairs of prisoners. OAR 291-139-005 states that agency's policy:

"(4)(a)   Every inmate incarcerated in a Corrections Division facility, as defined in this rule, will be afforded an opportunity to obtain legal assistance to deal with his/her affairs and redress through all lawful means with unrestricted access to the courts. * * *

"(b)   Each inmate will have the right to present any issue, including challenging the legality of conviction or confinement; seeking redress for illegal conditions or treatment while under control of the Corrections Division; pursuing remedies in connection with civil legal problems; and, [sic] asserting against correctional or other governmental authority any other rights protected by constitutional or statutory provision."

OAR 291-139-015 sets out procedures designed to assure prisoners reasonable lines of communication with courts and legal personnel to assist them in their legal affairs. Husband is subject to the Corrections Division rules, because

he is an inmate in the penitentiary. The rules are intended to assure that an inmate has reasonable access to the means of protecting his legal interests and that that access be meaningful. Husband has not cited the rules and has not argued that they are unconstitutional or that the Corrections Division failed to comply with them in his case. Instead, he relies on an assertion of a constitutional principle that is purely abstract on this record. Therefore, we do not reach his constitutional claim.

Affirmed. Costs to neither party.